# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GINA MARIE RANSANICI, also known as GINA
HILL,

Defendant-Appellant.

UNPUBLISHED
December 18, 2018

No. 339650
Gogebic Circuit Court
LC No. 2016-000274-FH

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Gina Marie Ransanici, was convicted after a jury trial of fleeing and eluding a police officer, MCL 257.602a, reckless driving, MCL 257.626, and operating without a license on her person, MCL 257.311. We affirm.

## I. BACKGROUND

Ironwood Public Safety Officer Jamie Chiapuzio was behind defendant's vehicle when defendant darted into traffic on US-2, a highway in Ironwood, Michigan, causing traffic to stop abruptly. He activated his marked cruiser's lights and followed behind the vehicle. The vehicle turned left, traveling across traffic moving in the opposite direction, which caused drivers to stop to avoid a collision with defendant. Defendant then pulled into a donut-shop parking lot, apparently trying to hide from the officer. Once Officer Chiapuzio entered the parking lot, defendant drove onto US-2 again.

Officer Chiapuzio activated his siren and followed defendant's vehicle. Defendant approached the intersection of Lake Avenue and Curry Street at a high speed and failed to stop for a stop sign. Defendant drove through the intersection and turned abruptly onto Lake Avenue. Defendant then continued along the street at a high rate of speed. A witness who lives on Lake Avenue testified that defendant skidded to a stop approximately 100 feet shy of a group of children playing in the street.

At that point, Officer Chiapuzio stopped his cruiser and approached defendant's vehicle. Officer Chiapuzio testified that when he asked defendant why she fled, she stated that she feared that "I was going to arrest her because she was at her in-laws' house." When he asked defendant

-1-

why she stopped, she told him that she "[heard me come] around the corner . . . she heard my sirens [and] believed at that point I wasn't going to let her go. She wasn't going to get away, so she felt [that] she needed to stop."

The jury found defendant guilty of the crimes noted earlier. The trial court sentenced her to a term of nine months in jail for fleeing and eluding, placed her on probation for two years, and ordered her to pay fines for the other convictions.

This appeal followed.

## II. ANALYSIS

*Jury Instructions.* On appeal, defendant first argues that she did not receive proper notice that the reckless driving charge pertained to any area beyond Lake Avenue, and that the trial court erred in failing to instruct the jury to limit their deliberations on reckless driving to this area. We review jury instructions de novo, in their entirety, to determine if error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).

With respect to the reckless-driving charge, the information read:

[Defendant] did drive a vehicle upon a highway, Lake Avenue, in willful or wanton disregard for the safety of persons or property; contrary to MCL 257.626.

During defense counsel's closing argument, counsel asserted that the information solely listed "Lake Avenue" as the segment of road where defendant recklessly drove and that defendant was speeding on Lake Avenue, but did not injure or damage property or otherwise drive in a reckless manner.

The trial court instructed the jury on reckless driving without speaking to location, consistent with the standard injury instruction, MI Crim JI 15.15. During its deliberations, the jury asked the trial court, "Is reckless driving only on Lake Avenue or whole route?" After reviewing all three counts of the information, the trial court declined to limit consideration of the reckless driving charge to Lake Avenue, stating:

It's clear from the information as a whole that we were dealing with her activities involving a motor vehicle on October 25, 2016 from the beginning of the incident all the way through to the end, as there is not only a reckless charge, there is a fleeing and eluding charge, and there's an operating without a license on person charge, which that last charge didn't take place until she stopped her vehicle and the officer was there and communicating with her, so it was clear from the information that what [defendant] was facing, as far as criminal charges, arose from her actions on that day, throughout the city, not necessarily specifically on Lake Avenue.

The trial court then told the jury that the "answer to that question is within your instructions," and reiterated the elements of reckless driving presented in the initial jury instructions. The trial court also stated that "your decision should be based on all the evidence regardless of which party produced it."

-2-

"The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009). "It is a practical requirement that gives effect to a defendant's right to know and respond to the charges against him," and, therefore, the defendant must show prejudice to prevail on a claim of inadequate notice. *Id*. (cleaned up). In the context of notice, prejudice refers to any unfair surprise to the defendant, which prevents her from adequately responding to the charges. See *People v Kelley*, 60 Mich App 162, 166-167; 230 NW2d 357 (1975). The trial court must instruct the jury as to the applicable law, and fully and fairly present the case to the jury in an understandable manner. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

Defendant argues that the trial court erred by failing to limit the jury instructions to the highway listed in the information. We disagree. The exact location of defendant's driving is not a material element of a reckless driving conviction. Rather, the only geographic requirement set forth in MCL 257.626 is that the reckless driving take place "upon a highway . . . or other place open to the general public." It is not disputed that the other roads upon which defendant drove are highways within the purview of the statute and that the parking lot in which defendant briefly stopped was a place otherwise open to the public for motor vehicle use. MCL 257.20; MCL 257.601. Moreover, defendant's driving in those other locations was part of a continuous series of events—lasting just a few minutes—in which Officer Chiapuzio witnessed defendant driving recklessly and attempted to pull her over. Indeed, a reasonable view of the record is that defendant's intent was to oscillate between various roadways and parking lots in an attempt to elude Officer Chiapuzio.

In its initial instructions to the jury at the beginning of trial, the trial court did not limit the charge to Lake Avenue. Similarly, the prosecutor did not limit her opening or closing statement to showing reckless driving on Lake Avenue. Defense counsel did not address the geographic location relevant to the reckless driving charge in his opening statement, nor did he object to the trial court's opening instructions. Over the course of trial, the trial court received evidence regarding defendant's driving on multiple roadways and parking lots. Defense counsel never moved to exclude this testimony from consideration for the reckless driving charge. Rather, defense counsel cross-examined the witnesses in a manner that would be expected of a well-prepared attorney. The first instance defense counsel argued that the reckless driving charge was limited to defendant's driving on Lake Avenue was in his closing argument.

In *Kelley*, 60 Mich App 162, this Court was presented with a similar claim. Although *Kelley* is not binding on this Court, we find its analysis persuasive. MCR 7.215(J). The defendant in *Kelley* was charged with driving an automobile while intoxicated in Frenchtown Township. *Id*. at 166. The defendant argued that "because the information so alleged it was reversible error not to submit evidence that the crime took place in that particular township." *Id*. This Court disagreed, concluding that where the exact location of the act is not a material element of the offense, a variance in the information that does not mislead the accused is not a material error requiring reversal. *Id*. at 166-167. Because the defendant was not misled by the variance, and the crime occurred within the Court's jurisdiction, this Court affirmed the defendant's conviction. *Id*. at 167.

In this case, it is not contested that the other points on defendant's route were within the trial court's jurisdiction. Given the continuous nature of the events leading to defendant's charges, and the generic reference in the statute to "any highway . . . or other place open to the general public," we cannot conclude that defendant was deprived of an opportunity to know of and respond to the charges against her. In a case involving a pursuit lasting only a few minutes and travelling several roadways, it would be unrealistic for this Court to conclude that defendant was not on notice that her entire route was at issue simply because each highway was not listed in the information. Any confusion the jury experienced with the instructions was plainly a result of defense counsel's harboring of this issue until closing argument, and the trial court adequately responded to the jury's inquiry, consistent with MCL 257.626. Defendant's claim is without merit.

*Sufficiency of the Evidence*. Defendant next argues that the prosecution failed to present sufficient evidence to convict her of reckless driving and fleeing and eluding a police officer. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). The reviewing Court must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A trier of fact may consider circumstantial evidence and all reasonable inferences that evidence creates. *Solloway*, 316 Mich App at 180-181. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (cleaned up). "This Court reviews de novo issues of statutory interpretation." *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

To find defendant guilty of reckless driving, the prosecutor was required to prove that defendant operated a vehicle in willful or wanton disregard for the safety of persons or property. MCL 257.626(1)-(2). "Willful or wanton disregard" is more than simply carelessness; "It means knowingly disregarding the possible risks to the safety of people or property." *People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018).

Here, the prosecutor presented evidence that defendant darted into traffic on US-2 on multiple occasions causing moving drivers to make abrupt stops. Moreover, Officer Chiapuzio testified that defendant took a corner at a fast clip while driving in a neighborhood and immediately accelerated. Defendant failed to stop at a stop sign and skidded to a stop only approximately 100 feet from children playing in the street, leaving visible skid marks in the street. The evidence was sufficient for the jury to conclude that defendant operated her vehicle in knowing disregard for the safety of others.

To convict defendant of fleeing and eluding, the jury was required to find that a police officer, acting in the lawful performance of his duty, gave defendant a visual or audible signal to stop, and that defendant willfully failed to obey that direction by increasing the speed of the vehicle, or by otherwise attempting to flee or elude the officer. MCL 257.602a.

Officer Chiapuzio testified that he activated the lights on his marked police cruiser and followed defendant after observing her vehicle dart into traffic, causing the traffic to stop abruptly. Defendant continued to drive erratically and then turned into a donut shop parking lot

and apparently tried to hide from him. When he turned into the parking lot and circled around to where he believed she was attempting to hide, defendant suddenly darted back onto the highway. Officer Chiapuzio then activated his siren and followed defendant. Defendant approached an intersection at a fast rate of speed and failed to stop for a stop sign, turned the corner, and then eventually skidded to an abrupt stop. Defendant acknowledged that she fled because she was afraid of being arrested, and that she stopped because she figured she would not be able to outrun the officer. The evidence was sufficient for the jury to conclude that defendant was aware that Officer Chiapuzio was attempting to stop her vehicle and willfully attempted to elude that stop.

Thus, sufficient evidence supported defendants' convictions for reckless driving and fleeing and eluding. Defendant's claims are without merit.

*Request for Continuance and Substitution of Counsel.* Defendant argues that the trial court abused its discretion in denying her motion for a continuance and in denying her request for a new attorney. "We review the trial court's ruling on defendant's request for an adjournment or a continuance for an abuse of discretion." *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). "The decision regarding substitution of counsel is within the sound discretion of the trial court and will not be upset on appeal absent a showing of an abuse of discretion." *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (cleaned up).

The day before trial, defendant filed a motion to raise an insanity defense—which was untimely under MCL 768.20a(1)—and a motion to substitute her trial counsel. Defendant argued that she was working with Community Mental Health Services and that she was concerned that her bipolar disorder combined with new medications would impact her competency to stand trial. She also stated that at the time of the incident she was in a bipolar-manic state. Defendant asked for an evidentiary hearing on her current mental-health state and her state of mind at the time of the incident. To support her insanity defense, defendant referenced a document showing that she was involuntarily committed to a mental health institution in October 2016 and had been diagnosed as bipolar. Defense counsel testified that he was aware of defendant's involuntary commitment and discussed an insanity defense with defendant, but that she declined to pursue the defense because she would have to submit to a mental-health evaluation.

The trial court found that the assertion of the insanity defense was untimely. As for competency, the trial court noted that defendant's behavior during previous proceedings was appropriate, and that there was no indication that she could not understand what was occurring in court proceedings. The trial court found that there had been "no demonstration" that defendant was incapable of understanding the proceedings up to that point and that defendant had consistently and rationally assisted her attorney in her defense. Thus, the trial court found that defendant was competent to stand trial.

As for substitute counsel, defendant asserted that there were "a couple of attorneys that I contacted that are, I guess, more familiar with the bipolar manic part that we're talking about here; what stage I was in during those events." She also stated that she wanted a new attorney to assist her in "the process of going through the trial." The court rejected defendant's motion, concluding that defendant had been aware of these issues since the inception of the case, during which she had ample time to seek substitute counsel.

"[T]o invoke the trial court's discretion to grant a continuance or an adjournment, a defendant must show both good cause and due diligence." *Coy*, 258 Mich at 18. "Good cause factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id.* (cleaned up). "Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* at 14.

The record indicates that defendant had been aware of her mental-health issues since at least the beginning of the case, but declined to submit to a mental-health evaluation. Despite her mental-health issues, the record is devoid of any indication that defendant could not assist her attorney in her defense. Rather, it appears that defendant merely changed her mind on the eve of trial, at which point an insanity defense was already untimely. Because defendant failed to timely assert her rights and failed to show good cause to delay trial or substitute counsel, the trial court did not abuse its discretion by denying defendant's motions. Defendant's argument is without merit.

*Ineffective Assistance of Counsel.* Finally, defendant argues that she was unconstitutionally deprived of the effective assistance of counsel because defense counsel failed to assert timely an insanity defense and failed to call her sister-in-law as a witness. To prevail on a claim of ineffective assistance of counsel, the defendant must show that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660. Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

The trial court conducted a *Ginther*[1] hearing at which it was established that defendant had been involuntarily committed to a mental health hospital and had been released shortly

---

[1] *People v Ginther*, 390 Mich 436, 439; 212 NW2d 922 (1973).

before her interaction with Officer Chiapuzio. Defendant stated that she informed defense counsel of her mental health issues before trial, as early as January 2017, and that they had discussed the possibility of raising an insanity defense. Defendant stated that defense counsel told her that she would have to be evaluated at a state psychiatric hospital and that she seemed fine. Defendant stated that she never told defense counsel that she did not want to raise an insanity defense, but that she deferred to his expertise in not pursuing the defense when he explained the requirements of raising it. She stated that she was not aware that the notice of her intent to raise the defense had to be filed 30 days before trial. Defendant noted that she wanted to hire a substitute attorney before trial and thought she would be granted more time to prepare for trial. Defendant also stated that she asked her attorney to call her sister-in-law as a witness because she thought her sister-in-law would be a "good witness" because the latter was there when defendant was arrested.

Defense counsel testified that he knew of defendant's mental health issues and her involuntary committal prior to arrest. He stated that he and defendant discussed the prospect of raising an insanity defense, but that defendant did not want to submit to an evaluation, did not want to be questioned about her mental health, and ultimately decided not to pursue the defense. According to defense counsel, defendant changed her mind on the eve of trial and he filed a notice to preserve the issue, knowing it was untimely. Defense counsel did not believe that defendant's mental health issues foreclosed her from assisting in her own defense. He testified that he chose not to call defendant's sister-in-law because she would have testified that she saw defendant speeding. After crediting defense counsel's testimony, the trial court denied defendant's motion for a new trial.

Upon this record, we cannot conclude that defense counsel's performance was objectively unreasonable. Regarding the insanity defense, the record shows that defendant initially did not wish to pursue the defense because it would require her to submit to a mental-health evaluation. Defendant changed her mind on the eve of trial, at which point defense counsel filed the proper motion to assert the defense, despite the motion being untimely. Defense counsel can hardly be faulted for failing to assert a defense defendant herself declined to assert. Concerning the testimony of defendant's sister-in-law, the record shows that defense counsel made a strategic choice not to present this evidence based upon his belief that it would be harmful to defendant's defense. This Court will not second-guess counsel's evidentiary decisions, particularly when defendant has not shown on appeal that her sister-in-law's testimony would have been helpful to her defense. *Rockey*, 237 Mich App at 76. Thus, defendant's claims of ineffective assistance of counsel are without merit.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause