# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALTON DUANE CARLL,

        Defendant-Appellant.

FOR PUBLICATION
January 23, 2018
9:05 a.m.

No. 336272
Delta Circuit Court
LC No. 15-009201-FH

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J.

Defendant appeals his convictions, following a jury trial, of one count of reckless driving causing death, MCL 257.626(4), and three counts of reckless driving causing serious impairment of a bodily function, MCL 257.626(3). The trial court sentenced defendant to serve concurrent terms of 4 to 15 years' imprisonment for his reckless driving causing death conviction and 23 months to 5 years' imprisonment for each of his reckless driving causing serious impairment convictions. For the reasons discussed below, we affirm defendant's convictions, but remand for resentencing.

The crash giving rise to this case occurred on June 17, 2015. Defendant, then 17 years old, and a licensed driver for only one month, was driving a pickup truck with six other young people in the vehicle. They were travelling on a gravel surface road trail. Alyson Anderson was seated in the front passenger seat of the truck, Daniel Garza, Danielle Baxter, and Edward Kwarciany were seated in the interior rear of the truck, and Brad Hemes and Gage Caswell, were riding in the bed of the truck. Testimony at trial established that defendant drove the truck through a stop sign at 30-40 mph and struck a car that was entering the intersection with the right of way. The driver of that car was killed and his passenger sustained serious injuries. Hemes and Caswell, the two young men riding in the bed of the pickup, were also seriously injured. Defendant testified at trial and admitted that he failed to stop at the stop sign. He asserted, however, that he had not been traveling at an excessive speed and that he had tried to stop, but that the truck's brakes did not respond.

## I. SUFFICIENCY OF EVIDENCE

On appeal, defendant first argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he was operating a motor vehicle with willful and wanton disregard for the safety of persons or property. We disagree.[1]

MCL 257.626 provides that a person who drives recklessly and causes death or serious injury is guilty of a felony:

> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.

> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor . . . .

> (3) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes serious impairment of a body function to another person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not less than $1,000.00 or more than $5,000.00, or both. . . .

> (4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . .

The conduct proscribed by subsection (2) of this statute is the operation of a vehicle in "willful or wanton disregard for the safety of persons or property." It is well settled that "to show that a defendant acted in willful and wanton disregard of safety, something more than ordinary negligence must be proved." *People v Crawford*, 187 Mich App 344,350; 467 NW2d 818, 821 (1991). When willful and wanton behavior is an element of a criminal offense it is not enough to show carelessness. Rather, "a defendant must have a culpable state of mind." *Id*.

The trial court instructed the jury that in order to convict, it must find that the defendant drove the motor vehicle with willful or wanton disregard for the safety of persons or property.

---

[1] A claim that the evidence was insufficient to convict a defendant concerns the defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction following a jury trial. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

"Willful or wanton disregard" means more than simple carelessness but does not require proof of an intent to cause harm. It means knowingly disregarding the possible risks to the safety of people or property. [2]

This Court evaluates a defendant's sufficiency of the evidence claim by asking whether "the evidence, viewed in a light most favorable to the [prosecution], would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). Questions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Finally, on appellate review, conflicts in the evidence are "resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Extensive evidence was presented to show that defendant drove in a manner that willfully or wantonly disregarded a high risk of serious injury to the people in his vehicle and other vehicles.[3] There was testimony and forensic evidence that defendant was driving too fast for the conditions. Anderson testified that defendant was going 30 or 40 miles an hour on the gravel road and that she told defendant to slow down because he was travelling faster than he normally did. Kwarciany testified that defendant was traveling 30 or 40 miles an hour when approaching the stop sign. Garza testified that he believed defendant was going 40-45 miles per hour and that

---

[2] Defendant did not object to this instruction and does not argue on appeal that it was incorrect. In a related argument, defendant asserts that the prosecutor's closing argument "watered down" the standard for recklessness, which requires a willful or wanton disregard for the safety of persons or property. During closing arguments, the prosecutor argued in pertinent part:

> We're asking for accountability to the defendant for killing and seriously injuring innocent individuals. We're asking for a reminder of our moral and legal duty to drive responsibly, and we're asking you to find that the defendant, beyond a reasonable doubt, knowingly disregarded the possible risks of the safety of other people due to his driving conduct.

Defendant did not object to this statement at trial and while it may have been somewhat incomplete, we do not find that the statement was misleading. In any event, any misunderstanding was corrected by the court's instruction on the elements.

[3] Defendant asks this Court to reevaluate the weight of the evidence and determine that the testimony that his driving was reasonable outweighed the testimony that it was not. When reviewing the sufficiency of the evidence, this Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Wolfe*, 440 Mich at 514-515.

he did not slow down before the stop sign. He described defendant's driving as "getting kind of reckless." Hemes testified that defendant was driving very fast, as fast as 50-60 mph and that he was "going way too fast . . . for people in the back [of the truck]," on high speed, which got worse as the ride continued. Caswell described defendant's driving as "weird" and "kind of terrifying" and testified that he estimated defendant's speed at 50 mph at the time of the crash.

The prosecution also presented testimony from a Michigan State Police officer who is an accident reconstructionist. He testified that there was no indication of braking on the gravel road, which would normally be evidenced by some of the gravel being dug out or dragged along the road surface. He also testified that the speed of the defendant's truck, at the moment of impact with the other vehicle, was in the range of 30 to 43 miles per hour. He and other witnesses described the stop sign as visible and noted that there was a "stop ahead" sign 180 feet before the stop sign itself. Kwarciany testified that he felt that defendant was trying to "gun through" the stop sign and believed that defendant accelerated as he approached the sign.

In sum, there was evidence that defendant purposefully drove through a stop sign at high speed without any attempt to brake and that he may even have accelerated into the intersection. A jury could fairly conclude that defendant's actions were willful or that they were done with wanton disregard of the potential consequences, i.e. death and serious injury.

## II. EXPERT TESTIMONY

Defendant testified that he was driving between 20 and 30 mph and that he did try to brake for the stop sign, but that the brakes failed. He testified that during the drive the brakes had been feeling "spongy," but that until he tried to stop for the stop sign he had been able to stop without difficulty. After the crash the vehicles were inspected and a broken rear brake line was found.

The prosecution presented Greg Bittner, the owner/operator of a local automobile repair shop, as an expert on auto mechanics. He testified that he inspected defendant's truck after the accident and that the brake line that was broken had been pulled apart in the course of the accident, not before. He was able to determine this by the fact that the line was cleanly cut and that the cut was at the point where the frame and cab had bent into the line. He testified that it was not a brake-line defect that might develop over time from age or corrosion and that the front and rear brakes operated from different lines so that even if the rear brakes failed prior to the crash, the front brakes would still have been working. He also testified that he found nothing wrong with the rotors, calipers, or pads. He concluded by offering his opinion that "the brakes should have worked prior to the accident."

Defendant argues that the trial court abused its discretion in allowing Bittner to testify as an expert and to offer an opinion regarding the cause of the broken brake line. We disagree. [4]

---

[4] This Court reviews for an abuse of discretion the trial court's determination regarding whether an expert witness was qualified. *People v Christel*, 449 Mich 578, 592 n 25; 537 NW2d 1(1995).

An expert witness may offer an opinion only if he or she has specialized knowledge that will assist the trier of fact to understand the evidence. *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008). MRE 702 provides that a person may have specialized knowledge on the basis of skill, training, experience, or education:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .

"The determinative inquiry in qualifying an expert is the nature and extent of knowledge and actual experience . . . ." *People v Christel*, 449 Mich 578, 592 n 25; 537 NW2d 194 (1995) (quotation marks and citation omitted).

The lawyers conducted an extensive inquiry into Bittner's qualifications. He described his training and extensive experience in brake analysis and repair. He had a college certification in automotive technology and a state certification in brakes—as well as fifteen years' experience inspecting and repairing brakes. Bittner stated that he works on brakes on "[a] weekly basis" and had repaired "[h]undreds" of brakes.[5] We find no error in the trial court's decision to permit Bittner to testify as an expert.

Defendant also argues that Bittner's testimony should have been excluded because his methodology was unreliable and so did not meet the standard of reliability set forth in MRE 702:

> [A] witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 obligates the trial court to "ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and

---

The trial court abuses its discretion "when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

[5] We also reject defendant's assertion that Bittner should not have been qualified as an expert because he had never before been qualified to provide expert testimony. Defendant provides no support for this assertion. While Bittner testified that it was his first time offering expert testimony before the trial court, logic dictates that every expert witness must have been qualified for the first time at some point. See *United States v Parra*, 402 F 3d 752, 758 (CA 7, 2005) (holding that "there is a first time in court for every expert"). Moreover, MRE 702 provides that a witness's qualification as an expert is to be determined by the witness's "knowledge, skill, experience, training, or education"; there is no requirement that the witness must have previously been recognized as an expert in a prior proceeding.

citation omitted). "Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *Id*. The inquiry into reliability is a flexible one that is tied to the facts of the particular case and a reliability determination may differ on the basis of the type of expert testimony offered. *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999).

We begin by noting that defendant does not criticize any specific aspect of Bittner's analysis. His criticisms of Bittner's testimony are general and not well-defined. In any event, it is clear that Bittner's testimony rested on a reasonable analysis. He testified that he personally examined defendant's truck, and set forth the data necessary to form opinions about the condition of the brake lines on defendant's truck. He explained the mechanism of hydraulic brakes and the fact that defendant's truck had separate lines for front and rear brakes, thereby ruling out the possibility that a single brake line failure would affect both front and rear brakes. He also testified that he was familiar with rusting brakes and brake lines that corrode over time and that he has seen such phenomenon many times. From this, he explained that the broken brake line had not broken due to corrosion or other natural cause, and described the most likely mechanism for the damage to the brake line as being the crash itself.

Accordingly, Bittner's testimony was based on well-established principles rather than on an experimental science. Bittner had sufficient data to form an opinion, based his testimony on reliable principles and methods, and applied those methods reliably to the facts of the case. Thus, the trial court did not abuse its discretion by qualifying Bittner as an expert and allowing him to offer his opinions.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial court was ineffective. We disagree.

Generally, a defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citation omitted). Where, as in this case, defendant did not move for a new trial or evidentiary hearing, our review is limited to mistakes apparent from the record. *Id*.

A criminal defendant has the fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To prove that his defense counsel was not effective, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Id*. at 694.

Defendant first argues that defense counsel was ineffective for failing to hire a mechanical expert to challenge Bittner's testimony. Defense counsel's failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance. *People v Ackley*, 497 Mich 381, 393; 870 NW2d 858 (2015). However,

-6-

effective counsel need not always provide "an equal and opposite expert[.]" *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011).

Defense counsel conducted an extensive cross examination of Bittner regarding his process and conclusions. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington*, 562 US at 111. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Defense counsel established that Bittner did not know whether there was brake fluid in defendant's brake fluid container at the time of the accident and that if the container was empty, defendant would not have had brakes. He also established that Bittner could have, but did not, videotape the inspection to show that defendant's brakes were otherwise in working order.

Defendant has also failed to establish that any error prejudiced him. A defendant is prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994). Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial. See *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). In this case, defendant has provided no indication that any expert witness would have been able to offer favorable testimony. Defendant has thus failed to establish that any error on defense counsel's part prejudiced him and he did not move for a remand for purposes of making such a record.

Next, defendant argues that counsel was ineffective for failing to challenge Bittner's expert opinion. As earlier discussed, there is no indication that Bittner's opinion was not appropriate expert opinion testimony or was not reliable. Counsel need not make futile challenges. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because a challenge to the basis of Bittner's testimony would have been futile, counsel did not provide ineffective assistance by failing to make such a challenge.

Accordingly, defendant's claim of ineffective assistance of counsel fails.

IV. OFFENSE VARIABLE (OV) 13

Defendant argues that the trial court improperly scored OV 13 at 25 points for a pattern of continuing criminal conduct when he had no prior record and all four convictions arose from a single act. We find no published case directly on point and conclude that this is an issue of first impression.

A trial court properly scores OV 13 if there was a "continuing pattern of criminal behavior." MCL 777.43. Specifically, the trial court is instructed to score OV 13 at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The statute then further provides that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). If no pattern of felonious criminal activity existed, the trial court must score OV 13 at zero points. MCL 777.43(1)(g).

We agree with defendant that a single felonious act cannot constitute a pattern and that the trial court erred in concluding otherwise.[6]  Although the statute provides guidance to the courts on how to score OV 13, MCL 777.43(2), it does not define the term "continuing pattern of criminal behavior."  The word "continuing" clearly refers to an event or process that takes place over time.  *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "continuing" as "to keep going or add to."  It defines "pattern" as "a reliable sample of traits, acts, tendencies or other observable characteristics of a person."  Accordingly, the statute contemplates that there must be more than one felonious event.

The prosecution directs our attention to two cases, however, both are readily distinguishable.  In *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013), the defendant argued that assessing points under OV 13 was improper because his convictions arose out of one incident.  Defendant robbed a jewelry store during which he took property that belonged to the store, and demanded that the two individuals present in the store turn over their personal possessions to him.  *Id*. at 478.  We approved the OV 13 scoring because "while the robberies arose out of a single criminal episode, *Gibbs* committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity."  *Id*. at 488.

Similarly, in *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001), we rejected defendant's argument that OV 13 was improperly scored at 25 points.  The defendant was convicted of four counts of making child sexually abusive material on the basis that he took four photographs of two underage victims on a single day.  *Id*. at 524.  Evidence presented at trial established that defendant took the photographs of the minors on "*two separate occasions*."  *Id*.  Thus, the trial court could properly score OV 13 in that case where defendant committed separate acts in a single criminal episode.

The instant case presents a very different circumstance.  Defendant's reckless driving constitutes a single act, and although there were multiple victims, nothing was presented to show that he committed separate acts against each individual victim in the course of the reckless driving.[7]  Accordingly, we conclude that the trial court improperly scored OV 13 at 25 points.  It should have been scored at zero.[8]

---

[6] This Court reviews de novo whether a sentencing court has properly interpreted and applied a sentencing statute because it is a question of statutory interpretation.  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  When interpreting a statute, if statutory language is unambiguous, this Court must enforce the statute as written.  *Id*. at 439.  The language of the statute itself is the primary indication of the Legislature's intent.  *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).

[7] The only case that appears to address this issue under the same circumstances is *People v Smith*, unpublished opinion per curiam of the Court of Appeals, issued February 25, 2003 (Docket No. 229137).  In that case, the defendant was convicted of operating a vehicle while his license was revoked causing death, operating a motor vehicle while under the influence of intoxicating liquor causing death, manslaughter, and failure to stop at the scene of a serious

-8-

Affirmed, but remanded for sentencing.  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Jane E. Markey
/s/ Michael F. Gadola

---

personal injury incident.  The defendant's convictions arose from one motor vehicle accident and we held that the defendant's four concurrent convictions did not support a 25-point score under OV 13 because they arose from a single act.  *Id*. at 8.  In construing the meaning of the word "pattern," as used in the statute, we noted that "[t]he use of the term 'pattern' and the fact that the Legislature permitted consideration of all crimes within a five-year period evinces an intention that it is repeated felonious conduct that should be considered in scoring this offense variable." *Id*.

[8] Defendant did receive other sentencing guideline points based on the number of victims.  PV 7 was scored for two concurrent convictions, i.e. two additional victims of the reckless driving, and OV 9 was scored at 10 points for 2 to 9 victims.