*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOSEPH DEWORNE SWILLING,

       Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 352860
Washtenaw Circuit Court
LC No. 18-000990-FC

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of two counts of armed robbery, MCL 750.529, one count of conspiracy to commit armed robbery, MCL 750.157a, MCL 750.529, two counts of first-degree home invasion, MCL 750.110a(2), one count of unlawful imprisonment, MCL 750.349b, one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and four counts of possession of a firearm while committing a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve imprisonment of 28 to 50 years for each armed robbery and conspiracy to commit armed robbery conviction, 15 to 25 years for each first-degree home invasion conviction and the unlawful imprisonment conviction, 40 to 60 months for the felon-in-possession conviction, and 5 years for each felony-firearm conviction. We affirm in part, vacate in part, and remand to the trial court for further proceedings.

## I. BACKGROUND

This case stems from a home invasion in October 2018. One evening Hui Wang was watching television while his wife Susan Wang prepared some food in the kitchen when a brick crashed through a glass door near Hui and hit him in the hands. The Wangs had multiple security cameras inside and outside their house that recorded the incident.

Defendant and his codefendants— Deangelo Reed and Elijah Wilson-Beauford—entered the Wangs' home through the broken door. Reed and defendant had guns in their hands when they entered the house. Defendant and his codefendants were not wearing masks or otherwise

-1-

obscuring their faces, allowing the Wangs to recognize Reed because he painted their house two months earlier.

Over a period of 30 to 40 minutes, defendant, Reed, and Wilson searched throughout the house for items to steal. Included in the items stolen from the Wangs' house was a television as well as both domestic and foreign money. During the home invasion, defendant hit Hui and Susan; the Wangs' feared they would be killed. Before the three offenders left the Wangs' house, they tied Susan to a chair and tied Hui's hands behind his back.

Defendant was taken into custody one week after the home invasion. In an interview with police, defendant identified himself as one of the three home invaders. Defendant explained to police that Reed wanted the Wangs to be at home during the home invasion so the Wangs could lead the intruders to valuable items. Defendant also told police that Wilson-Beauford was recruited to participate in the home invasion at the last minute. The jury convicted defendant as stated above. This appeal followed.

## II. ANALYSIS

### 1. DOUBLE JEOPARDY

Defendant first argues that his first-degree home invasion convictions and sentences violated the double jeopardy provisions of the Michigan and United States Constitutions because only one entry into the house occurred. The prosecution agrees that defendant should have been convicted and sentenced for only one first-degree home invasion count. The parties are correct that defendant's first-degree home invasion convictions and sentences violated double jeopardy. *People v Baker*, 288 Mich App 378, 386; 792 NW2d 420 (2010). Thus, we vacate one of defendant's first-degree home invasion convictions and sentences and remand to the trial court for it to correct defendant's judgment of sentence.

### 2. OFFENSE VARIABLES

Defendant's second claim of error is that the trial court erred when scoring offense variables (OVs) 10, 13, 14, and 17. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v Roberts*, 331 Mich App 680, 687-688; 954 NW2d 221 (2020), reversed in part on other grounds by *People v Roberts*, 506 Mich 938 (2020) (cleaned up). Finally, "[t]he trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014).

Defendant argues that the trial court should have assessed zero points for OV 10 because he did not know the age of the victims and also did not exploit their age. OV 10 addresses the "exploitation of a vulnerable victim." MCL 777.40(1); *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008). For OV 10, a score of 10 points is appropriate if the defendant exploited a victim's agedness. *Id.* If the defendant did not exploit a victim's vulnerability, then zero points should be assessed. *Id.* "Exploit" is defined as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The mere existence of one or more factors described in the statute does not automatically equate with a victim being vulnerable. MCL 777.40(2).

The trial court did not err when it concluded that the victims were vulnerable. The evidence showed that they were elderly and their victim impact statements supported the conclusion that the victims were susceptible to injury.

Additionally, the trial court concluded that defendant and his codefendants targeted the Wangs because of their age and specifically broke in the home when they knew the Wangs were present. The record supports this finding; Reed targeted the Wangs because he knew about them from painting their house. Furthermore, video surveillance shows defendant and his codefendants looking in the window to ensure the Wangs were home before breaking the door and entering the house. The record further establishes that defendant and his codefendants had complete control of the situation after they broke in to the house; the Wangs did everything they were told and did not struggle or resist while defendant and his codefendants were in their home.

Defendant argues that these facts fail to establish that he exploited the Wangs' age. Rather, defendant argues that "[a] middle-aged couple would have suffered the same fate" at the Wangs. Defendant might be correct, but simply because other potential victims might have suffered the same fate does not mean that defendant did not exploit the Wangs' age. As an elderly couple, the Wangs were clearly more susceptible to a home invasion than a younger couple might have been. Thus, while defendant's argument has some merit, it fails to establish that the trial court clearly erred by finding that defendant exploited the Wangs' age.

Finally, the trial court supported its OV 10 scoring decision by noting that defendant's codefendants each also were assessed 10 points for OV 10. The trial court erred by doing so because OV 10 must be scored based on the defendant's conduct alone without considering the conduct of his or her codefendants. See *People v Gloster*, 499 Mich 199, 206-207; 880 NW2d 776 (2016). This error, however, does not require reversal because the trial court articulated sufficient reasons to assess 10 points for OV 10. Thus, we affirm the trial court's assessment of 10 points for OV 10.

Defendant next argues that the trial court erred when it assessed 25 points for OV 13. Defendant argued that he did not have three qualifying felonies within the last five years and that it was error for the trial court to find that three of defendant's convictions in the instant case could constitute a continuing pattern of criminal behavior. According to defendant, the trial court should have assessed zero points for OV 13.

OV 13 addresses a continuing pattern of criminal behavior. MCL 777.43(1). The trial court assesses 25 points for OV 13 if the offense was part of a pattern of felonious criminal activity involving three or more crimes against a person. MCL 777.43(1)(c). All crimes within a five-year period, including the sentencing offense, should be counted. MCL 777.43(2)(a).

MCL 777.43(1)(c) does not prohibit the trial court from finding that multiple convictions arising from the same incident constitute a pattern for the purposes of OV 13. See *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013); *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). In *Gibbs*, 299 Mich App at 488, this Court found that, although the defendant's robbery convictions arose out of a single criminal episode, the defendant committed three separate acts, one against each of the three victims. The *Gibbs* Court concluded that those three distinct crimes constituted a pattern of criminal activity for the purposes of OV 13. *Id.*

But not all cases involving convictions of multiple crimes constitute a pattern of criminal conduct. In *People v Carll*, 322 Mich App 690, 693; 915 NW2d 387 (2018), the defendant was convicted of four counts of reckless driving. The charges in *Carll* stemmed from a vehicle crash caused by the defendant. *Id.* at 693-94. The *Carll* Court acknowledged the rulings in *Gibbs* and *Harmon*, but found that *Carll* was distinguishable. *Id.* at 705-706. The *Carll* Court noted that the convictions in *Gibbs* and *Harmon* arose from multiple acts by those defendants, but concluded that the defendant's convictions in *Carll* all arose from a single act even though that act had multiple victims. *Id.* Thus, the *Carll* Court assessed zero points for OV 13. *Id.*

Defendant argues that *Carll* dictates the result in this case, but the facts of this case present a situation more similar to those in *Gibbs* because, like that defendant, defendant's convictions here arose out of multiple acts. Defendant's convictions for home invasion, armed robbery, and unlawful imprisonment arose from a single criminal episode. But those convictions were based on multiple separate criminal acts. Thus, the trial court did not err when it found that defendant had engaged in a continuing pattern of criminal behavior based solely on the convictions that arose from the home invasion of the Wangs' house. Accordingly, the trial court did not err when it assessed 25 points for OV 13.

Defendant next argues that the trial court erred when it assessed 10 points for OV 14. Defendant argues that it was error to find that he was a leader in the home invasion and that zero points should have been assessed for OV 14.

OV 14 addresses an offender's role in the crime. MCL 777.44(1). In a multiple-offender situation, the trial court assesses 10 points for OV 14 if the offender was a leader. MCL 777.44(1)(a). The entire criminal transaction should be considered when scoring this variable. MCL 777.44(2)(a). If there are three or more offenders involved, more than one offender may be determined to have been a leader. MCL 777.44(2)(b). "[A] 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014). Possession of a gun can be considered some evidence of leadership, but gun possession alone is not enough to establish that an offender was a leader for purposes of OV 14. *Id.* at 91.

The parties agree that Reed was one leader of the home invasion. The question presented is whether defendant could also be considered a leader for the purposes of OV14.

Defendant and Reed had guns during the home invasion. Additionally, as the trial court pointed out, the video footage from the Wangs' security cameras showed that defendant was acting like a leader, while codefendant Wilson-Beauford was not. The video footage, which was corroborated by the victims' testimony, showed defendant taking items directly from Susan's purse and Hui's wallet, walking throughout the house, and having Hui lead defendant to a safe in the basement. Conversely, the video footage showed Wilson-Beauford mainly browsing through the kitchen cabinets. Additionally, defendant recruited Wilson-Beauford to participate in the home invasion at the last minute. All of these factors combined demonstrate that defendant was acting as a leader in the home invasion. Thus, the trial court did not err when it assessed 10 points for OV 14.

Finally, defendant argues that the trial court erred when it assessed 5 points for OV 17. Since defendant filed this appeal, this case was remanded and the score assessed for OV 17 was changed to zero. This issue is therefore moot.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm in part, vacate in part, and remand for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica

-5-