*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELLI MARIE RIDER,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No.   364775
Wayne Circuit Court
LC No.   21-007586-01-FC

Before:  GLEICHER, C.J., and GARRETT and MALDONADO, JJ.

PER CURIAM.

This case arises from Kelli Marie Rider's alleged beating of and theft from Steven Harmony, the complaining victim.  After a bench trial, the court convicted Rider of armed robbery, MCL 750.529, assault with intent to commit murder (AWICM), MCL 750.83, and assault with a dangerous weapon (felonious assault), MCL 750.82.  The court sentenced Rider to 18 to 40 years' imprisonment for the armed robbery and AWICM convictions, and one to four years' imprisonment for the felonious assault conviction.  Harmony was the sole testifying witness at trial.

On appeal, Rider argues that (1) she was convicted on insufficient evidence, and (2) the trial court erred by scoring offense variable (OV) 13 at 25 points during sentencing.  Although the evidence sufficed to establish the essential elements of each of Rider's convictions, the trial court erred by scoring OV 13 at 25 points, and this scoring error affected the calculation of Rider's recommended sentencing guidelines.  We affirm Rider's convictions and remand for resentencing.

## I. BACKGROUND

Harmony lived in one of two upstairs apartments in a construction warehouse he owned in Detroit.  He testified that he offered Rider a place to stay after she called him repeatedly around 1:30 a.m. and asked for help.  After speaking with Rider on the phone, Harmony went downstairs and saw Rider rummaging through his car.  Rider identified herself and reiterated that she needed help, so Harmony invited her inside.  Harmony noticed another individual sitting in a nearby car, whom Rider said was her fiancé.  Once inside and upstairs, Harmony told Rider she could spend

the night, and she went back outside purportedly to tell the fiancé that she was okay. Upon her return, Rider started smoking drugs in the kitchen area, and Harmony protested.

Harmony testified that Rider then picked up a two-or-three-foot metal pipe that was holding up a door and looked at him "like crazy." "I knew something's gettin' ready to go down because she asked me if I had any gun on me. And I said, 'No, why do I need it?' And that's when she grabbed the pipe." Harmony tried to retreat downstairs, but Rider "came after" him and struck his head; Harmony stated:

> And I'm 16 feet up in the air, I fall down to the bottom [of the stairs] on the concrete, hit my head again. She's runnin' down the stairs, grabbing and start[s] beatin' me with this pipe. And I'm fightin' for my life. She goes, "I want the f[***]in' "— she goes, "I want the money."

According to Harmony, Rider struck him seven or eight times with the pipe, with blows to his legs, arms, back, and multiple blows to his head. During the attack, Rider said she wanted money and that she was " 'gonna kill' " Harmony. "She says, 'I'mma [sic] take your life. I want the money. Where is the money?" Harmony tried to fight back. However, Rider's "boyfriend"[1] then appeared from a back room and started choking Harmony while Rider continued hitting Harmony with the pipe. Harmony testified that after the boyfriend searched Harmony's pockets, he and Rider left, taking over $1,000 belonging to Harmony with them.

The trial court convicted and sentenced Rider as described earlier. Rider's presentence investigation report (PSIR) scored OV 13 at 25 points. Defense counsel objected to the scoring of OV 13 at sentencing, but the court left OV 13 as scored. Rider now appeals.

## II. STANDARDS OF REVIEW

This Court reviews a claim of insufficient evidence de novo, "view[ing] the evidence in a light most favorable to the prosecution [to] determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*. at 619. "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*.

This Court reviews "the interpretation and application of the legislative sentencing guidelines de novo." *People v Nix*, 301 Mich App 195, 204; 836 NW2d 224 (2013). "When scoring the guideline variables, [a] sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *Id*. (quotation marks and citation omitted, alteration in original). This Court reviews the scoring "to determine whether the sentencing court properly exercised its discretion and whether the evidence

---

[1] The boyfriend was the same person Harmony apparently saw earlier outside whom Rider identified as her fiancé (See Tr I, 21).

-2-

adequately supported a particular score." *Id*. A score must be upheld "if there is any supporting evidence." *Id*.

## III. ANALYSIS

Rider argues that the evidence was insufficient to find her guilty beyond a reasonable doubt. As an initial matter, Rider only challenges Harmony's credibility, as opposed to the substance of the evidence before the trial court. But this Court cannot interfere with the fact-finder's assessment of a witness's credibility. *Kanaan*, 278 Mich App at 619. Here, defense counsel questioned Harmony's credibility throughout cross-examination and closing arguments. The trial court, acting as the fact-finder and viewing the evidence first-hand, found Harmony's testimony sufficiently consistent and believable.

Further, to the extent Rider argues that Harmony was an unreliable witness because he "disappeared" during trial, this is a red herring. Harmony fully participated in the evidence portion of trial, including submitting to defense counsel's questions on cross-examination. Although Harmony was absent from the final two days of trial when the court rendered and subsequently clarified its verdict, nothing in the record indicated that he "disappeared," or that his absence after the parties rested their cases in any way affected the reliability of his earlier testimony.

Setting aside Harmony's credibility, his testimony sufficed to establish the essential elements of each offense at issue here. The trial court convicted Rider of armed robbery, AWICM, and felonious assault. The elements necessary to prove armed robbery under MCL 750.529 are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018).]

The elements necessary to prove AWICM under MCL 750.83 are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Abraham*, 234 Mich App 640, 657; 599 NW2d 736 (1999) (footnote omitted). The elements necessary to prove felonious assault under MCL 750.82 are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an imminent battery." *People v Bosca*, 310 Mich App 1, 20; 871 NW2d 307(2015), rev'd in part on other grounds, 509 Mich 851 (2022). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*.

First, Harmony's testimony sufficed to convict Rider of armed robbery. Harmony testified that Rider struck him repeatedly with a metal pipe, demanded money, and left with over $1,000.

Thus, Rider used force and violence against Harmony in the course of committing larceny, doing so in possession of a dangerous weapon.[2]

Harmony's testimony also sufficed to convict Rider of AWICM. Again, Harmony testified that Rider struck him repeatedly with the pipe, including numerous blows to his head. During the attack, Rider threatened to kill Harmony numerous times while continuing to strike him with the pipe. Rider left Harmony with significant injuries, and he was in intensive care for four days. Interpreting the evidence in the prosecution's favor, Harmony's testimony established that Rider assaulted him. Further, Rider's repeated threats to kill Harmony and the numerous times she struck him with the metal pipe suffice to prove Rider's intent to kill.

Finally, Harmony's testimony sufficed to convict Rider of felonious assault. Harmony testified that Rider came after and attacked him with the pipe, thus perpetrating an assault with a dangerous weapon. And given Rider's repeated blows, the evidence supported her intention, at the very least, to injure Harmony. For these reasons, the evidence—viewed properly in the prosecution's favor and accepting the trial court's determination of Harmony's credibility— sufficed to establish the essential elements of each of Rider's convictions.

Rider also argues that the trial court erred by scoring OV 13 at 25 points because her convictions all arose from a single felonious act.

"A trial court properly scores OV 13 if there was a 'continuing pattern of criminal behavior.' " *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018), quoting MCL 777.43. The trial court must score OV 13 at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). If no pattern of felonious criminal activity existed, the trial court must score OV 13 at zero points. MCL 777.43(1)(g).[3]

In *Carll*, 322 Mich App 690, this Court clarified that "a single felonious act cannot constitute a pattern" under OV 13, and "there must be more than one felonious event." *Id*. at 704-705. The Court concluded it was improper to score the defendant 25 points under OV 13 because "[the d]efendant's reckless driving constitutes a single act, and although there were multiple

---

[2] M Crim JI 17.10 defines a dangerous weapon "as any object that is used in a way that is likely to cause serious physical injury or death." Further, while some "objects are designed for peaceful purposes," they "may be used as dangerous weapons. The way an object is used or intended to be used in an assault determines whether or not it is a dangerous weapon." M Crim JI 17.10. Interpreting the evidence in the prosecution's favor, Rider's repeated blows with the metal pipe were likely to cause serious physical injury or death. Indeed, accepting Harmony's testimony, Rider's attack did cause him to suffer serious physical injury.

[3] Notably, no points are scored under OV 13 for criminal activity involving only two crimes against a person.

victims, nothing was presented to show that he committed separate acts against each individual victim in the course of the reckless driving." *Id*. at 705-705.

*Carll* distinguished two other cases where the trial court properly scored OV 13 at 25 points. *Id*. at 5. In the first, the defendant committed, albeit during "a single criminal episode," "three separate acts" constituting "three distinct crimes [and] a pattern of criminal activity." Specifically, "[t]he defendant robbed a jewelry store, during which he took property that belonged to the store and demanded that the two individuals present in the store turn over their personal possessions to him." *Id*., citing *People v Gibbs*, 299 Mich App 473; 830 NW2d 821 (2013). The second case involved a defendant "convicted of four counts of making child sexually abusive material on the basis that he took four photographs of two underage victims on a single day." The trial court properly scored 25 points under OV 13 because of evidence that the defendant took photographs of the minors on two separate occasions, thus "commit[ing] separate acts in a single criminal episode." *Id*., citing *People v Harmon*, 248 Mich App 522; 640 NW2d 314 (2001).

Following *Carll*, Rider did not demonstrate a pattern of felonious criminal activity involving three or more crimes against a person. Although the trial court convicted Rider of three separate offenses from the criminal episode at issue, her actual conduct involved only two distinct felonious acts. In particular, Rider's convictions for AWICM and felonious assault, despite involving some different elements, both arose from the same action, Rider attacking Harmony with the metal pipe. Rider's theft from Harmony and conviction of armed robbery admittedly constitute a second, separate crime for the purposes of scoring this variable, but the facts still lack any third felonious act necessary to support scoring Rider 25 points. The trial court, therefore, should have scored OV 13 at zero points.

Where a scoring error occurs, resentencing is required if the sentencing guidelines will change under the corrected score. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). Here, the trial court sentenced Rider within the recommended minimum guidelines range of 135 to 225 months' imprisonment. But properly scoring OV 13 at zero points, Rider's recommended guidelines range should have been 126 to 210 months' imprisonment. See MCL 777.21; MCL 777.62; see also *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004) (providing an overview of scoring procedure). Resentencing is therefore warranted.

We affirm Rider's convictions but remand for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kristina Robinson Garrett
/s/ Allie Greenleaf Maldonado

-5-