*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTEISHA DEONA DORTY,

Defendant-Appellant.

UNPUBLISHED
March 24, 2026
12:02 PM

No. 373798
Macomb Circuit Court
LC No. 2023-002186-FH

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of reckless driving causing death, MCL 257.626(4), and reckless driving causing serious impairment of a body function, MCL 257.626(3). On appeal, defendant argues there was insufficient evidence to support her convictions. We disagree and affirm.

## I. BACKGROUND

On January 13, 2023, defendant was driving with her sister in defendant's Chevrolet Equinox, heading southbound on Hoover Road. According to defendant, she was traveling at a speed of about 40 to 50 miles per hour as she approached the intersection of Nine Mile and Hoover. Defendant recalled she had a green light and proceeded through the intersection without braking. In the intersection, defendant's car collided with a white Nissan Rogue driven by the victim, Raehel Barber.[1] Defendant testified that she felt an impact, hit her head on the driver's side door, and passed out. The force of the impact spun the victim's vehicle, and the victim was propelled through her windshield. Paramedics took the victim to the hospital, but she was pronounced dead shortly after. Defendant and her sister were also taken to the hospital for treatment; defendant's sister had "an obvious right lower leg deformity" with her foot "turned in an abnormal direction," and her right tibia and fibula were fractured. Marijuana and benzodiazepines were discovered in

---

[1] Barber's daughter clarified the name Raehel was an error on Barber's birth certificate, and her family called her "Rachel."

-1-

defendant's system. The next thing defendant could recall after the collision was waking up in her bed near the end of January 2023.

Detective Michael Kohlruss, a fatal-accident investigator for the Warren Police Department, inspected the accident scene. Based on his examination, the detective determined that the point of impact was near the center of the intersection, and he found no evidence—such as pre-collision skid marks or brake patterns—that would indicate defendant applied her brakes before the collision. The detective retrieved security camera footage from a nearby gas station, which had a camera facing the accident; the footage was admitted at trial. In the security video, defendant's vehicle is not visible until it is in the intersection, colliding with the victim's vehicle—which, as the detective explained, meant defendant's vehicle "was moving too fast" to appear in the video before the accident.

Sergeant Chad Lindstrom with the Michigan State Police Traffic Crash Reconstruction Unit analyzed the "CDR, EDR"[2] data of the two vehicles involved in the collision. At trial, he testified that the longitudinal and lateral changes in speed of the vehicles during the collision indicated that, because of the impact, the speed of the victim's vehicle changed 14 miles per hour, front to back, in 290 milliseconds, and 48 miles per hour, side-to-side, in 215 milliseconds. According to the sergeant, when such a change in speed "is approaching 50 miles an hour, I would expect fatality." The sergeant also observed that, after the collision, the speedometer stick on defendant's vehicle was at 101 miles per hour and that, in his experience, the position of the speedometer stick is relatively close to the speed at the moment of impact. He further testified that the airbags in defendant's vehicle deployed in six milliseconds, which was indicative of higher vehicle speeds and was inconsistent with an accident occurring at only 40 to 50 miles per hour. And he testified that the precrash data for defendant's vehicle, which was captured between five and 0.5 seconds before impact, recorded speeds for the vehicle between 104 and 106 miles per hour and indicated that the accelerator was still being pressed one second before impact. The sergeant calculated, based on the friction of a dry roadway, that the vehicle's lowest speed at the moment of impact could have been 95 miles per hour if the driver began braking at 0.5 seconds, and he opined that defendant's vehicle was traveling 104 to 106 miles per hour in the seconds before the collision.

Three eyewitnesses also testified at trial. Mariah Fante, who was stopped at a nearby gas station at the time of the collision, estimated that defendant's vehicle was traveling at least 40 to 50 miles per hour down Hoover, and that defendant was speeding fast enough to catch Fante's attention even though she was facing a different direction. Fante recalled seeing the light turn red about five seconds before defendant's speeding vehicle ran through the intersection. Fante observed defendant's vehicle strike the victim's vehicle as the victim was attempting to turn. Linda Troche testified that she heard a "very, very loud" crash, saw a white car spinning, and witnessed "a woman fly out of the car through the windshield." Troche approached the woman to render aid but did not detect a pulse. In the other vehicle, she found an unconscious woman on the driver's side that she later identified as defendant, and a woman on the passenger's side screaming that her

---

[2] "CDR" refers to a computer program called Crash Data Retrieval that facilitates analysis of data from the "EDR" or Event Data Recorder of a vehicle, colloquially known as a "black box."

leg was broken. Nakia Gandy testified that, on the evening in question, it was raining or snowing and, as she approached the intersection in question, she noticed the traffic lights were out. While stopped at the intersection, she saw a white minivan pass through the intersection, with the driver's "cell phone lit up" and "in her hand"; saw another vehicle turn out from a parking lot onto Hoover; and then looked down and heard a "boom." According to Gandy, the collision occurred beyond the intersection and closer to the parking lot. Gandy then approached the scene of the collision and saw a woman and a young girl who was "crying" and "hysterical," as well as a woman in the road. Gandy acknowledged that it was "possible that some of the things that [she] remember[ed] may not be necessarily accurate because of how traumatic [the event] was for [her]."

As noted, the jury found defendant guilty of both reckless driving causing death, MCL 257.626(4), and reckless driving causing serious impairment of a body function to another person, MCL 257.626(3). This appeal followed.

## II. STANDARD OF REVIEW

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (cleaned up). It is the jury's role, as factfinder, to determine "the weight of the evidence [and] the credibility of witnesses," *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), and "[i]t is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). Accordingly, "a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* (quotation marks and citation omitted).

## III. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant claims that the evidence presented at trial was insufficient to establish that her driving was reckless and caused the fatal accident. We disagree.

A conviction of reckless driving causing death requires proof of three elements: (1) "the defendant drove a motor vehicle on a highway," (2) "the defendant drove the motor vehicle in willful or wanton disregard for the safety of persons or property (in other words, recklessly)," and (3) "the defendant's operation of the vehicle caused the victim's death." *People v Otto*, 348 Mich App 221, 234; 18 NW3d 336 (2023); see also MCL 257.626(2) and (4). A conviction of reckless driving causing serious impairment of a body function requires proof of the same first two elements, and that the defendant's reckless driving "cause[d] serious impairment of a body function to another person." *People v Russell*, 297 Mich App 707, 723; 825 NW2d 623 (2012), citing MCL 257.626(3).

Contrary to defendant's claim on appeal, there was ample evidence presented at trial to support the recklessness element of her convictions. To establish that defendant drove recklessly—i.e., "in willful or wanton disregard for the safety of persons or property," MCL 257.626(2)—the prosecution was required to prove that defendant " 'knowingly disregard[ed] the possible risks to the safety of people or property. ' " *Otto*, 348 Mich App at 236, quoting *People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018). "[I]t is not enough to show carelessness or ordinary negligence." *Otto*, 348 Mich App at 234 (quotation marks and citation omitted).

According to defendant, she was not driving recklessly because she was traveling close to the 35 miles per hour speed limit at the time of the collision. Defendant testified to that effect at trial and, on appeal, she points to the testimony of eyewitness Fante as further support. But this witness did not, as defendant claims, testify that she "was certain that [defendant's] vehicle was not traveling more than 5 to 15 miles over the posted speed limit." Rather, Fante estimated that defendant's vehicle was "*at least* going 40 to 50" (emphasis added), and that "it was pretty fast to the point where it caught my attention and my car was not even facing that way. I seen them traveling very fast." And, as summarized above, the overwhelming weight of the evidence presented at trial demonstrated that defendant was traveling not in the range of 40 to 50 miles per hour, but instead at a much higher rate of speed. Evidence to this effect included: that the speedometer stick on defendant's vehicle was found to be pointed at 101 miles per hour following the collision; that the CDR precrash data indicated that the speed of defendant's vehicle in the moments prior to the collision ranged from 104 to 106 miles per hour; that the vehicles' respective changes in speed upon collision and post-collision conditions were indicative of speeds higher than 40 to 50 miles per hour; and that the gas station video camera did not pick up defendant's vehicle until the collision because it "was moving too fast" to be visible in the pre-collision footage. In addition, the evidence at trial showed not only that defendant was traveling at a very high rate of speed at the time of the collision, but that she ran through a red light while doing so.

Defendant makes no attempt to account for any of this other evidence, nor does she attempt to argue (and indeed, we fail to see how she could) that driving at approximately 100 miles per hour through a red light would have been anything less than reckless in this case. Instead, defendant merely "asks this Court to reevaluate the weight of the evidence" in usurpation of the jury's role, which this Court will not do. *Carll*, 322 Mich App at 697 n 3; see also *Oros*, 502 Mich at 240; *Kanaan*, 278 Mich App at 619. Here, the evidence presented at trial was more than sufficient to permit the jury to rationally conclude, beyond a reasonable doubt, that defendant was driving "in willful or wanton disregard for the safety of persons or property." *Otto*, 348 Mich App at 234; see *Kenny*, 332 Mich App at 402-403.

No better is defendant's argument that there was insufficient evidence to show that her reckless driving caused the fatal accident. Here too, defendant supports her position by pointing to the testimony of a single witness—this time, Gandy—while ignoring all the other evidence presented at trial. According to defendant, Gandy "reported seeing a white minivan cause the accident by crossing Nine Mile from the left turn land [sic] while distracted by her cell phone," and this other vehicle was an intervening cause of the accident. See, e.g., *Otto*, 348 Mich App at 233 (recognizing that an intervening event, such as a sudden mechanical failure, can break the causal chain between a defendant's reckless driving and the victim's injury or death).

Gandy herself admitted, however, that her recollection of the events at issue may have been inaccurate due to the trauma she experienced as a witness. And her account of those events was flatly inconsistent with all the other evidence presented at trial, including defendant's own testimony. For instance, Gandy remembered it was raining or snowing that night, but all other evidence indicated the weather was clear. Gandy also believed that the victim's car had completely crossed the intersection with Nine Mile Road, that the accident had occurred further south on Hoover, and that the other vehicle involved in the collision had turned out of the nearby parking lot. But all other evidence indicated that the point of impact was near the center of the intersection, and there was no other evidence of an involved vehicle departing from the parking lot. And while Gandy testified that the traffic lights at the intersection were not functioning prior to the collision, all other evidence—including defendant's testimony—indicated that the lights were working.

It is apparent from the verdict that the jury did not find Gandy to be a credible witness, and we see no basis to disrupt that assessment on appeal. See *Oros*, 502 Mich at 240; *Kanaan*, 278 Mich App at 619; *Carll*, 322 Mich App at 697 n 3. Nor does defendant explain how the full body of evidence presented at trial was somehow insufficient to establish causation. To the contrary, the record makes clear that there was ample evidence from which the jury could rationally conclude, beyond a reasonable doubt, that defendant's reckless driving caused the fatal accident. See *Kenny*, 332 Mich App at 402-403.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Philip P. Mariani