*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MELISSA SUE MORGAN,

Defendant-Appellant.

UNPUBLISHED
March 10, 2022

No. 353557
Kalamazoo Circuit Court
LC No. 2019-001017-FC

Before: M. J. KELLY, P.J., and STEPHENS and REDFORD, JJ.

STEPHENS, J. (*concurring in part, dissenting in part*).

I concur with the majority in all respects except regarding its conclusion that the trial court did not abuse its discretion when it qualified Kalamazoo Department of Public Safety (KDPS) Officer Steven Seiser as an expert and allowed him to testify about the patterns of behavior of drug-dependent people. Even so, I do not believe the error was outcome determinative and, therefore, would affirm defendant's convictions and sentences.

Defendant argues the trial court abused its discretion when it qualified Seiser as an expert on the patterns of behavior of methamphetamine users. I agree, but conclude the error was not outcome determinative.

MRE 702 governs the admission of expert testimony and provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial court determining whether to admit expert testimony under MRE 702 acts as a gatekeeper to ensure testimony is relevant and reliable. *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). MRE 702 requires the trial court to ensure the reliability of any expert

-1-

testimony admitted at trial. *People v Carll*, 322 Mich App 690, 700; 915 NW2d 387 (2018) (citation omitted). "Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007). "The inquiry into reliability is a flexible one that is tied to the facts of the particular case, and a reliability determination may differ on the basis of the type of expert testimony offered." *Carll*, 322 Mich App at 700, citing *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999). In acting as a gatekeeper, however, the trial court is not required "to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes." *People v Muhammad*, 326 Mich App 40, 52; 931 NW2d 20 (2018) (quotation marks and citation omitted). "In other words, the inquiry is not into whether an expert's opinion is necessarily correct or universally accepted, it is into whether the opinion is rationally derived from a sound foundation." *Id*. (cleaned up).

The majority concludes that Seiser's testimony was reliable in light of his "years-long experience with the [Kalamazoo Valley Enforcement Team (KVET)] and his daily contact with multiple drug users," and was derived from not only information provided by confidential informants, but also Seiser's own observations and those of his KVET colleagues. Thus, the majority concludes that the trial court did not abuse its discretion when it qualified Seiser as an expert in the patterns of behavior of methamphetamine users. I believe the majority's conclusions regarding the reliability of Seiser's testimony are, respectfully, mistaken.

At the hearing on defendant's motion to disqualify Seiser as an expert, Seiser denied having studied research by other experts regarding the lifestyle and manipulative behavior of drug users. Seiser also denied having participated in studies comparing the behavior of homeless drug users to homeless persons who do not use drugs. During the prosecution's direct examination of Seiser at the motion hearing, Seiser explained that, in his experience, female drug users were "[m]ore apt to find companionship with a male individual" that sometimes (but not always) looked like a domestic relationship. Seiser affirmed that this pattern of behavior was "common" with informants, including female informants. The trial court asked Seiser's definition of "common" and whether he could "put any type of number on that." Seiser indicated "between 35 and 50 percent" and affirmed that it was "maybe half or less" of the female informants with whom he interacted. On cross-examination at the motion hearing, however, Seiser admitted that he did "not have any statistics" regarding the number of drug users who were in manipulative situations versus not. Seiser also testified that "[a] majority of the individuals that [he has] dealt with" had relationships that "turn[ed] into a sexual relationship, but it may not start off that way." When asked if he could give a percentage regarding his claim, Seiser stated he could not "give you a percentage" and did not "have the statistics" because "[t]hey don't exist." Seiser also acknowledged that he did not "have a number with any kind of certainty" and affirmed that he was "guessing basically[.]"

At trial, when defendant's trial attorney conducted voir dire of Seiser before he was qualified to testify, Seiser indicated he could not give percentages regarding where individuals fell in terms of their lifestyle. Seiser acknowledged that studies give "good percentages of individuals that may fall in certain patterns, and others that don't," and denied that he was able to opine on "how many people fall outside of that life style." Trial counsel also asked: "So, you could be testifying that 90-percent of the people that you encounter fall within those life styles, but we will

never know the accurate amount of individuals that fall within that life style will we?" Seiser responded that he would "not be able to testify as to how many people fall within . . . a certain parameter" of "that life style." And when asked by trial counsel whether "it could be 99-percent, [or] it could be 2-percent," Seiser stated, "I can't testify as to numbers like that." At both the motion hearing and at trial, the trial court relied on Seiser's experience as a police officer and with KVET, and the fact he spoke with several drug users each day, when qualifying him as an expert.

I believe that Seiser's claims regarding the behavior of drug users were unreliable because he failed to study research by other experts regarding the behaviors of drug users, was unable to provide statistics, and admitted that he was "guessing" when it came to his claims regarding the behavior of drug users. Additionally, as defendant points out, Seiser's expert opinion was derived, in part, from statements made by confidential informants who were often either paid for their statements or cooperated with police to "work off charges" and diminish the risk of incarceration. Given Seiser's failure to study research and provide statistics regarding the behavior of drug users, his admission that he was "guessing basically," and the fact that his opinions were derived from untrustworthy sources, I believe Seiser's opinions were not "rationally derived from a sound foundation." *Muhammad*, 326 Mich App at 52 (quotation marks and citation omitted). Thus, I disagree with the majority's conclusion that "the fact that Seiser had not formally studied the lifestyles of homeless drug users or formally documented his own observations pertained to the weight of his testimony, not to its admissibility." Accordingly, I conclude that the trial court abused its discretion in allowing Seiser to testify about the patterns of behavior of methamphetamine users.

Seiser's testimony regarding the patterns of behavior of methamphetamine users is problematic for another reason. To be admissible under MRE 702, the proffered testimony must involve a matter "that is beyond the common understanding of the average juror." *Kowalski*, 492 Mich at 121; see also *People v Bynum*, 496 Mich 610, 624; 852 NW2d 570 (2014) ("If the average juror does not need the aid of expert testimony to understand the evidence or determine a fact in issue, then the proffered testimony is inadmissible because it merely deals with a proposition that is not beyond the ken of common knowledge.") (quotation marks and citation omitted). In *People v Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986) (citation omitted), our Supreme Court explained that in answering the question of whether an expert's opinion is necessary in aiding the jury to decide the ultimate issue, it is helpful to use "the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from" experts. Although Seiser had superior information to the ordinary juror on patterns of behavior for homeless drug users, the jurors had the capacity to analyze the evidence they received and determine "intelligently and to the best possible degree" what type of relationship defendant and Hayes had without Seiser's opinion on the issue. Accordingly, admission of Seiser's testimony was an abuse of discretion.

Although Seiser's testimony should not have been admitted, its admission was not outcome determinative. An alleged evidentiary error must be considered "in the context of the untainted evidence," and "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks and citation omitted). Here, Holly Rosen, a social worker employed as the director of "MSU Safe Place," which, among other things, provides programming that

-3-

addresses domestic violence and stalking, and a defense witness, testified similar to Seiser. When asked by the prosecutor on cross-examination whether she was familiar "with the type of relationships that a drug user, drug-dependent person, who is homeless has with another, let's say, adult male, but there's not necessarily [a] romantic or sexual relationship," Rosen replied:

> I know that a lot of people, and this is anecdotal from what I've seen. I haven't really attended a lot of training on this but I have seen people who are drug dependent living on couches of friends . . . some of them give sex [in] exchange for drugs . . . . [J]ust kind of depending on each other for what they need. . . . [W]hen you're vulnerable—part of the vulnerable population whether you're homeless or really poor or drug addicted, you often rely on others in the same situation to help you out. So, there's . . . a lot of give and take in that subculture or communities.

Rosen also testified there is often "manipulation where there is drug dependency," and she agreed that addicts use manipulation to either get what they need or to satisfy their drug habit. Thus, Seiser's testimony regarding the patterns of behavior of drug users and their use of manipulation was cumulative of other evidence at trial.

In arguing that Seiser's testimony was outcome determinative, defendant compares the present case to *People v Hamiliton*, unpublished per curiam opinion of the Court of Appeals, issued February 9, 2016 (Docket No. 319980).[1] There, the defendant argued it was an abuse of discretion for the trial court to allow a substance abuse counselor to give an expert opinion about whether the defendant was a drug addict, and to fail to limit the counselor's testimony to "common characteristics of drug addicts." *Id*. at 6. This Court concluded it need not determine whether the trial court erred in either instance because, even if the trial court had erred, any error was harmless beyond a reasonable doubt because it was "largely cumulative to that given by the various expert witnesses from both sides." *Id*. at 6-7. Our Supreme Court vacated the discussion regarding expert witnesses and remanded to this Court for consideration of the defendant's claims regarding the qualification and testimony of the substance abuse counselor, observing that the panel erred "in determining that because [the counselor's] testimony was arguably cumulative, it was harmless." *People v Hamilton*, 500 Mich 938 (2017).

On remand, this Court concluded the trial court abused its discretion by qualifying the counselor as an expert witness without any indication of "what opinion [the counselor] was going to offer or what principles and methodology she had used to reach her conclusions." *People v Hamilton (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2017 (Docket No. 319980), pp 2-4. The counselor then presented "an extremely broad and ultimately speculative set of opinions" regarding the defendant's alleged drug addiction. *Id*. at 4. The *Hamilton (On Remand)* Court concluded:

> Given the speculative nature of [the counselor's] testimony, the lack of evidentiary support for some of her "wonderings" and "maybes," and the lack of any discernable and reliable principles and methodologies for reaching her

---

[1] In Michigan, unpublished opinions are not precedentially binding, but may be considered for their persuasive value. See *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

opinions, . . . the trial court abused its discretion and abandoned its role as gatekeeper when it allowed [the counselor] to testify without first ensuring that her testimony would be reliable and based on actual facts as opposed to mere speculations and wonderings. [*Id*. at 5.]

A majority of our Supreme Court denied leave to appeal on this Court's decision. *People v Hamilton*, 501 Mich 1094 (2018). However, Justice MCCORMACK, joined by Justice BERNSTEIN dissented from the majority's decision to deny leave, noting that "[t]he defendant's trial included extensive speculative and prejudicial testimony from an 'expert' prosecution witness" and that "[a]dmission of that testimony radically changed the trial in a way that may have rendered it fundamentally unfair." *Id*. (MCCORMACK, J, dissenting).

Defendant argues that Seiser's testimony was "the type of testimony admitted in *Hamilton*," and that "a thorough review of the entire case compels the conclusion that the error of admitting [Seiser's testimony] was outcome determinative." I disagree. Seiser's testimony is distinguishable from that of the substance abuse counselor in *Hamilton*. The counselor in *Hamilton* testified specifically to the defendant's alleged drug addiction and how it factored into the charged crime. Seiser, on the other hand, provided only general information about the lifestyles of the drug-dependent people he had observed. He did not express his opinion that defendant fit his profile, nor did he specifically compare defendant's circumstances to the characteristics of his profile in such a manner that suggested defendant used methamphetamine. The jury's questions indicated they understood that Seiser's testimony was for their general education about the patterns of behavior of the methamphetamine users he had met. Therefore, contrary to defendant's argument, Seiser did not expressly portray defendant as a manipulative drug user desperate to meet her needs.

Defendant also argues that admitting Seiser's testimony triggered a chain of events that "greatly impacted [defendant's] credibility." Defendant asserts that admitting Seiser's testimony required trial counsel to call Rosen to testify regarding nonintuitive behaviors of trauma victims to explain defendant's behavior and to counter Seiser's testimony. According to defendant, this led the prosecution to use Rosen's testimony to argue for the admission into evidence of "all of the text messages from [defendant's] phone" to show her state of mind, and to then refer "to the text messages for the vast majority of her closing argument." The record does not support defendant's argument.

There is no indication that admission of Seiser's testimony compelled defense counsel to call Rosen as a witness. Rosen's testimony suggests that its purpose was to challenge the assumptions that KDPS Detective Jon Stolsonburg and others drew from their interviews with defendant. Whereas the officers found defendant's claim of having been raped to be dubious, Rosen's testimony suggested that, had they used trauma-informed interview techniques, they would have realized that defendant's behavior was consistent with that of a person suffering from trauma. The testimony of Seiser and Rosen served different purposes, and where there was overlap, e.g., regarding the behavior of persons made vulnerable by drug use, poverty, or both, Rosen's testimony was similar to Seiser's testimony. Because there was no logical reason why Seiser's testimony about the lifestyles of the drug users with whom he worked necessitated testimony about how the trauma of sexual assault affected the brain and memory, defendant's "chain of events" theory fails.

Lastly, defendant maintains that the fact that the jury took six days to reach a verdict indicates that determining credibility was difficult and that Seiser's testimony tipped the scales against defendant. Defendant fails to show how general information about the lifestyles of drug-dependent persons tipped the scales against him, particularly when the trial court instructed the jury on the proper use of Seiser's testimony, i.e., to use it only as background information, not as substantive evidence that defendant committed the charged crimes. It is well-established that "[j]urors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

Based on the entire record before us, I am not convinced that defendant met her burden of showing that, but for admission of Seiser's testimony, it is more probable than not that a different outcome would have occurred. Accordingly, although I believe the trial court abused its discretion in admitting Seiser's testimony regarding the patterns of behavior of methamphetamine users, the error was not outcome determinative.

/s/ Cynthia Diane Stephens