*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TIMCO, Minors.

UNPUBLISHED
January 19, 2023

No. 358500
Macomb Circuit Court
Family Division
LC Nos. 2019-000047-NA
2019-000048-NA
2019-000060-NA

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor children, EMT, JAT, and JT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent).[1] Respondent argues that trial counsel was ineffective, that the Department of Health and Human Services (the Department) did not make reasonable efforts at reunification, that the trial court clearly erred by finding statutory grounds for termination, and that the trial court clearly erred by finding termination was in the children's best interests. Finding no merit to respondent's arguments, we affirm.

## I. FACTS AND PROCEEDINGS

Respondent and the children's mother were divorced with two children, EMT and JAT, when the children were removed from their parents' care in February 2019. The children's mother had been awarded sole legal and physical custody of the children under the parties' divorce judgment, and the judgment required respondent's parenting time to be supervised. The Department initiated proceedings for jurisdiction over the children after the children's mother was hospitalized for mental illness. Respondent did not have a suitable home to care for the children.

---

[1] The trial court also terminated the parental rights of the children's mother, but she is not a party to this appeal.

Following a bench trial at the adjudicative phase, the trial court found statutory grounds for exercising jurisdiction over EMT and JAT. Respondent was ordered to comply with a parent-agency agreement to rectify the conditions that led to the children's removal. Respondent's mental illness was the primary focus of the services offered to him. He had been diagnosed with schizophrenia and displayed erratic and unstable behavior throughout the proceedings. After the Department initiated proceedings, respondent was not allowed parenting time with the children until he underwent a psychological evaluation to assess whether he was a risk of harm to the children.

During the proceedings, he sent e-mails and text messages to the Department's workers and the trial court regarding bizarre allegations such as governmental conspiracies and his belief that he was kidnapped as a child. At one supervised visitation, respondent had an angry outburst in which he yelled that people "who bleed from their crotches" should obey men. Respondent also sent a caseworker messages saying that "if any worker came out to his house, he has a gun and he would handle them accordingly." Respondent's supervised visitation was suspended because of his aggressive and inappropriate behavior, which made the children afraid to attend visitation. Respondent also did not promptly begin individual mental health therapy. When he did begin therapy, he revoked his consent to the release of his treatment records to the Department. Respondent did, however, complete parenting classes and attend domestic violence counseling.

Although respondent and the children's mother had divorced and were not planning jointly for reunification, they had a third child, JT, while the proceedings were pending in March 2021. The court also exercised jurisdiction over that child. Following a two-day hearing in July 2021, the trial court found that statutory grounds for termination of respondent's parental rights were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The court held an additional best-interest hearing and found that termination of respondent's parental rights was in the children's best interests. This appeal followed.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent first argues that he was denied the effective assistance of counsel. Generally, "[w]hether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo." *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020). But when, as in this case, respondent did not raise the issue of ineffective assistance of counsel by moving for a new trial or evidentiary hearing, our review is limited to mistakes apparent from the record. *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018).

The Michigan and United States Constitutions guarantee criminal defendants the right to the effective assistance of counsel. Const 1963, art 1, § 20; US Const Am VI. "Given the nature of accusations and consequences in child-protective proceedings, this right has been extended to these civil proceedings." *In re Casto Minors*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357656); slip op at 9, citing *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). To succeed on an ineffective-assistance-of-counsel claim, the respondent must show "that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Martin*, 316 Mich App at 85. On the deficient performance element, a respondent must "overcome the strong presumption that

counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[T]his Court must be cognizant of, and guard against, the bias of applying 20/20 hindsight to counsel's performance." *Casto*, ___ Mich App at ___; slip op at 9. To establish prejudice, a respondent must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citations omitted). Effective assistance of counsel is presumed, and thus respondent bears the burden of proving otherwise. See *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

Respondent offers a litany of arguments criticizing counsel's performance throughout the proceedings, but he presents little as far as identifying what counsel could have done differently that could have made a different result reasonably probable. Respondent generally complains that counsel failed to present evidence and did not adequately cross-examine witnesses, but respondent does not identify what evidence he believes counsel should have presented or explain how counsel could have questioned witnesses differently. The proceedings against respondent focused on his mental health, and over two years, respondent balked at participating in therapy, refused to take medication for his condition, and revoked his consent to his provider's disclosure of information regarding his progress. Respondent fails to identify any evidence that counsel could have offered to demonstrate respondent's commitment to his mental health treatment or potential to maintain mental stability.

Respondent similarly complains that counsel's closing argument at the termination trial and best-interest hearing was brief and focused mostly on arguing that the court should allow respondent more time to participate in services. At the termination trial, trial counsel did emphasize respondent's compliance with other aspects of his treatment plan, such as his completion of parenting classes, which was one of the few aspects favorable to respondent. Counsel asked the court to allow respondent more time in light of these efforts. And counsel again requested that the court give respondent more time to address his mental health issues at the best-interest hearing. To the extent that counsel's arguments were not convincing, it was not because of deficient performance by counsel, but because of the overwhelming evidence of respondent's significant mental health issues, which respondent was unwilling to acknowledge or address. Under the circumstances, respondent has failed to establish that defense counsel made an objectively unreasonable error in rejecting a potentially beneficial strategy. Respondent cannot overcome the presumption that counsel's strategy of urging the court to allow respondent more time was a sound choice.

Respondent complains that trial counsel failed to advocate for parenting time after the trial court found that his psychological evaluation did not assess his risk to the children. He argues that counsel should have followed the court's suggestion to move for parenting time pending an appropriate risk assessment if there was additional information to demonstrate that respondent was not a risk to the children. But he does not identify what additional information counsel could have presented in support of such a motion. Further, respondent fails to correlate this alleged error to the outcome of the proceedings. It is undisputed that respondent was eventually granted parenting time, but when he exercised that parenting time he made a poor showing of his parenting skills and he acted inappropriately and aggressively toward the agency workers. There is no evidence that suggests a more successful outcome would have been probable had visitation not been delayed. Similarly, although counsel could have been more proactive in considering respondent's

need for a guardian ad litem, one was appointed early in the proceedings, and there is no basis to conclude that counsel's failure to request one earlier impaired respondent's progress.

Respondent also contends that trial counsel was ineffective by failing to request accommodations for his disability. Respondent's disability was a severe mental illness, and his treatment plan focused heavily on mental health treatment. Respondent was required to undergo psychological and psychiatric evaluations and participate in therapy and domestic violence counseling. But as previously noted, respondent consistently impeded efforts to address his mental health issues. Considering respondent's unwillingness to participate in the mental health services offered to him, he does not explain how these services could have been made more accessible and more accommodating of his mental illness.

For all these reasons, respondent has failed to demonstrate that he was denied the effective assistance of counsel.

### III. REASONABLE EFFORTS TOWARD REUNIFICATION

Respondent next argues that the Department failed to make reasonable efforts to reunify him with his children, particularly by failing to offer services to accommodate his mental health disability.

"In order to preserve an argument that [the Department] failed to provide adequate services the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley,* ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502, 358503); slip op at 2 (quotation marks and citation omitted). Respondent did not request accommodation of his disability or otherwise argue below that the Department's services were inadequate or that the Department failed to make reasonable efforts at reunification. Therefore, this issue is unpreserved. We review unpreserved issues for plain error affecting a respondent's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

The Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., does not provide a defense to proceedings to terminate parental rights. *In re Terry*, 240 Mich App 14, 24-25; 610 NW2d 563 (2000). Nonetheless, it requires the Department to reasonably accommodate a disabled parent in the provision of services to achieve reunification and avoid termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017). The Department's obligations under the ADA dovetail with its affirmative duty under Michigan's Probate Code "to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id*. at 85, citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). "While the [Department] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). In order to prevail on an argument that reunification efforts were inadequate, a respondent must establish that he would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). This includes identifying the services that the Department should have provided to

accommodate the parent's specific needs. See *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021).

Respondent asserts that the Department failed to offer individualized services to accommodate his specific mental health concerns. As explained earlier, the Department did offer mental health treatment services, which were the focus of respondent's treatment plan, but it was respondent who was unwilling to cooperate with these services. Moreover, respondent fails to identify the additional services he believes should have been offered to accommodate his mental illness. Respondent also argues that the Department failed to assist with housing, income, and employment. With respect to housing, the evidence showed that respondent was living with his mother, but he would not allow the home to be assessed by workers. Respondent also reported that he was employed, but he failed to produce documentation verifying his employment and income. In any event, these issues were not the principal barriers to reunification. Respondent's significant mental health issues prevented him from having unsupervised contact with the children. In sum, respondent has not established any plain error related to the adequacy of the Department's efforts at reunification.

## IV. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the trial court erred by finding that clear and convincing evidence supported a statutory ground for termination.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a court's determination that a statutory ground for termination has been proven by clear and convincing evidence. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). A trial court's decision is clearly erroneous "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). If at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

Respondent first argues that the trial court clearly erred by finding statutory grounds for termination under MCL 712A.19b(3)(c)(*i*). Under this provision, termination is authorized when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order,[2] and the court, by clear and convincing evidence, finds . . . the following:

---

[2] MCL 712A.19b(3)(c)(*i*) does not apply to JT because respondent's parental rights to JT were terminated in the initial dispositional order after that child's adjudication.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)].

Termination is proper under MCL 712A.19b(3)(c)(*i*) where "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *Williams*, 286 Mich App at 272. Respondent's mental illness was the primary condition that led to the adjudication of EMT and JAT. Respondent delayed starting recommended therapy. After he attended for a short time, he revoked his consent to the provider's release of treatment records to the Department. Respondent was also unwilling to acknowledge his mental health condition or his need for treatment, or to take medication for his condition. Respondent's mental illness contributed to his unstable behavior throughout the proceedings. His completion of parenting classes, participation in domestic violence counseling, and partial cooperation with therapy were inadequate to address his significant mental health issues as a barrier to reunification. And his partial compliance with the other aspects of his parent-agency agreement was insufficient to establish a reasonable likelihood that he would be able to adequately address his mental health issues within a reasonable period of time. The trial court provided respondent with ample opportunity to show progress in his treatment plan, noting that it was "mindful of [the] fact that mental health challenges may require time to address." But over two years had passed by the termination trial since the initiation of proceedings against respondent. Respondent had not only actively spurned certain efforts to improve his mental health, but his mental health conditions had arguably worsened. Accordingly, the trial court did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights to EMT and JAT under MCL 712A.19b(3)(c)(*i*).

With respect to JT, MCL 712A.19b(3)(j) provided a sufficient statutory ground for termination of respondent's parental rights. Under this provision, termination is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). Clear and convincing evidence supports that JT, as well as EMT and JAT, were reasonably likely to be harmed if returned to respondent's care. Respondent's untreated schizophrenia rendered him unable to effectively interact with his children, the Department's workers, and the trial court. He bombarded Department staff with inappropriate and irrational messages that were not relevant to his treatment plan, he did not meaningfully interact with his children during visits, and he verbally abused and threatened workers. Because respondent failed to rectify the severe mental health issues underlying his erratic behavior, there existed a reasonable likelihood that the children would be harmed if returned to his care. The trial court did not clearly err by finding that the evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(j).[3]

---

[3] Having concluded that at least one statutory ground supported termination of respondent's parental rights to each of his children, we need not address whether clear and convincing evidence supported the trial court's finding of statutory grounds under MCL 712A.19b(3)(c)(*ii*) and (g). See *Foster*, 285 Mich App at 633.

## V. BEST INTERESTS

Finally, respondent challenges the trial court's findings that termination of his parental rights was in the children's best interests. "Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). We review the trial court's best-interest findings for clear error. *Sanborn*, 337 Mich App at 276.

The focus of the best-interest determination is on the children, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Factors to consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. Unless "the best interests of the individual children *significantly* differ," the trial court need not make "redundant factual findings concerning each child's best interests." *Id*. at 715-716.

The Department presented substantial evidence that termination of respondent's parental rights was in the children's best interests. Respondent suffered from mental health issues that contributed to his inability to focus on parenting skills or his children's welfare. He demonstrated distorted perceptions of reality when he neglected his children during visits, when he interacted with the Department's workers, and when he participated in court proceedings. Respondent blames his lack of progress on inadequate services, but as discussed earlier, respondent did not make any meaningful effort to address, or even acknowledge, his mental health concerns. In particular, EMT entered court wardship with behavioral problems and developmental delays attributable to psychological trauma while living with respondent, but he had made strong progress since his removal. The three children were living together in foster care, and the trial court found that the foster mother was capably meeting the children's needs and the children were thriving in her home. EMT and JAT participated in weekly therapy, and their foster mother fully cooperated with therapy and other services the children needed. The foster mother was also willing to adopt all three children and provide them with the stability and permanency they deserved. In sum, the trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett