*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 30, 2024

v

BYRON JONES,

Defendant-Appellant.

No. 365393
Wayne Circuit Court
LC No. 21-002548-01-FC

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his jury trial convictions of unarmed robbery, MCL 750.530, assault with a dangerous weapon (felonious assault), MCL 750.82, felon in possession of a firearm (felon-in-possession), MCL 750.224f, possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b, and malicious destruction of personal property ($200 or more but less than $1,000), MCL 750.377a(1)(c)(*i*). Defendant was sentenced to 15 to 30 years' imprisonment for unarmed robbery, 4 to 15 years' imprisonment for felonious assault, 5 to 20 years' imprisonment for felon-in-possession, five years' imprisonment for felony-firearm, second offense, and six months' for malicious destruction of property. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, for unarmed robbery, felonious assault, and felon-in-possession. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

This appeal arises from a series of events that occurred on May 31, 2020. At trial, Cassandra Riley testified that she knew defendant for almost 15 years, and on the date in question,

---

[1] *People v Jones*, unpublished order of the Court of Appeals, entered July 31, 2023 (Docket No. 365393). The parties filed a prior appeal in this case that this Court dismissed pursuant to a stipulated order of dismissal. *People v Jones*, unpublished order of the Court of Appeal, entered March 16, 2023 (Docket No. 365283).

she was outside her aunt's house in Detroit when she witnessed defendant walk into her grandmother's house. She told defendant that he needed to exit the house because he did not live there to which defendant replied that he was using the bathroom, but Cassandra insisted that he could not be inside the house. Defendant then exited the house.

As they were both walking down the driveway, defendant said, "b****, you don't even live over here no more." Cassandra's son, Lamont Murray, overheard what defendant said and told defendant to "stop disrespecting" Cassandra. Defendant replied, "I'll beat both of y'all motherf***ing asses." Defendant and Murray then engaged in a physical fight. They eventually stopped fighting, at which point defendant ran to Cassandra's car, and smashed her car windows, causing $350 in repairs. After smashing the windows, defendant came back toward Cassandra and Murray, while pointing a gun at them,[2] stating that he would "kill y'all motherf***ers." Murray tried to run, but he slipped on the grass. Defendant jumped on Murray and hit him on the head with his gun, causing it to fire into the air. When this happened, defendant jumped up, grabbed Murray's phone, and got into his car. Murray yelled, "give me my phone!" Shortly thereafter, the police arrived at the scene and defendant returned thereto. The police later found Murray's phone at a nearby house.

Murray's testimony was, for the most part, similar to Cassandra's. He testified that, when defendant walked toward the house, Cassandra followed him. Murray could not hear what Cassandra and defendant were saying to each other, but Cassandra's voice was low and respectful, while defendant's voice was hostile. Murray then told defendant to stop talking disrespectfully to Cassandra. Defendant became upset and retorted, "who do you think you're talking to?" Murray replied, "you think you're tough because you have a gun on you." Murray did not see a gun on defendant, but was aware he might have one. Defendant reached for his hip, pulled out his gun, and gave it to a bystander. Subsequently, Murray and defendant engaged in a physical fight.

When the fight ended, defendant took back the gun, pointed it at Murray and Cassandra, and said he was about to kill them. Murray began running, but slipped on the grass, causing his phone to fall out of his pocket. According to Murray, defendant then hit Murray on the head with the gun. The gun went off, and defendant stopped hitting Murray. Murray ran toward the house, and defendant picked up Murray's phone. When defendant grabbed the phone he said, "it's my phone now." Defendant drove away, but he later returned without Murray's phone. Murray located his phone at a garage nearby, using the Find My application.

Officer Steven Brandon, of the Detroit Police Department, testified that he responded to the scene of the incident and arrested defendant. Subsequently, he walked to a nearby house and recovered Murray's phone from inside the garage. Officer Brandon found a gun box inside defendant's vehicle, but did not find a gun.

---

[2] Cassandra testified both that defendant had the gun when he took Murray's phone, and that he did not have the gun "during the fight."

Officer Kyle Arella, of the Detroit Police Department, testified that, when he arrived at the scene of the incident, he began speaking with defendant. Defendant said there was a little fight that did not amount to anything. Officer Arella looked for a shell casing on the lawn where the fight occurred and defendant's gun allegedly went off, but he did not find one.

Defendant testified that, prior to the incident, he was "hanging out" with Murray, George Russell, and Jamal Riley ("Jamal")—Cassandra's nephew. Jamal gave permission for defendant to go use the bathroom at his relative's house, however, once defendant entered the house, he heard Cassandra outside "fussing," so he came to the door. Cassandra told him to get out, so he left the house and headed home. As he was leaving, defendant muttered to himself, "b****, you don't even stay over here no more." Murray overheard defendant say this. Consequently, Murray spit in defendant's face, and then defendant picked up a wrench and smashed the windows in the car he thought belonged to Murray.

Defendant saw Murray attempting to break the windows in defendant's car, so defendant ran over and tackled Murray. When they were tired of fighting, they stopped. Defendant testified that Russell then hit Murray on the head with a gun, causing the gun to discharge. Defendant claimed he never had a gun. Subsequently, defendant drove off to cool down. Defendant eventually pulled over, and when he tried to unlock his phone, he realized he had grabbed Murray's phone. Defendant testified that he thought the phone he grabbed was his phone. Defendant denied saying that he was going to beat up Cassandra and Murray while also denying taking a gun from his waistband and handing it to someone before fighting with Murray. Defendant also denied ever pointing a gun at Cassandra and Murray, or stating that he would kill them. Defendant denied ever stating: "this is my phone now." Defendant testified he did not know why he left the phone in a garage, but maintained he wanted to return the phone to Murray.

At sentencing, the trial court scored Offense Variable 13 (OV 13) (continuing pattern of criminal behavior) at 25 points, counting defendant's convictions for unarmed robbery, felonious assault, and felon-in-possession as the three criminal acts necessary to score OV 13 at 25. The trial court also noted that defendant's charge for first-degree home invasion could count as the third offense under OV 13 if felon-in-possession was not applicable. Defendant objected to the latter two criminal acts being applied under OV 13, but the trial court erroneously maintained that one or both were applicable.

## II. ANALYSIS

In his appeal, defendant argues that felon-in-possession cannot be counted as part of a pattern of felonious criminal activity under OV 13 because it is a crime against public safety. Defendant's assertion on appeal is correct. Defendant also argues that the charge of first-degree home invasion (stemming from another unresolved case) could not be counted under OV 13 because, when defendant was sentenced, the only evidence of the first-degree home invasion was the prosecutor's comment, stating that defendant had been charged therewith. Again, defendant's argument on appeal is correct.

For issues pertaining to sentencing guidelines scoring on appeal, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022) (citation omitted).

"Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* at 411 (citation omitted). "The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Sanford v State*, 506 Mich 10, 14-15; 954 NW2d 82 (2020) (quotation marks and citation omitted). "If the language of a statute is plain and unambiguous, the statute must be enforced as it is written." *Ziegler*, 343 Mich App at 411 (citation omitted).

Pursuant to MCL 777.43, "[a] trial court properly scores OV 13 if there was a continuing pattern of criminal behavior." *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018) (quotation marks and citation omitted). "Specifically, the trial court is instructed to score OV 13 at 25 points when the offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." *Id.* (quotation marks and citation omitted). MCL 777.43 "further provides that for determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." *Id.* (quotation marks and citation omitted). After counting defendant's unarmed robbery and felonious assault convictions under OV 13, the trial court concluded that either defendant's felon-in-possession conviction or his first-degree home-invasion charge could be applied as the third offense necessary to score OV 13 at 25 points.

As previously stated, defendant is correct in his assertion that convictions for felon-in-possession are not applicable to OV 13 because felon-in-possession is a crime against public safety, and public safety crimes cannot be used to establish a pattern of felonious criminal activity under OV 13. *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011); see also MCL 777.16m (designating felon-in-possession as a public safety crime). However, the trial court also held that defendant's charge for first-degree home invasion was applicable under OV 13. "A sentencing court may consider all record evidence before it when calculating the guidelines, including . . . a presentence investigation report." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (citation omitted). Defendant's Presentence Investigation Report (PSIR) noted that he had a charge related to another case for first-degree home invasion pending in the circuit court. When scoring OV 13, a sentencing court can consider a defendant's prior offenses, crimes, and criminal activity, regardless of whether such conduct resulted in a conviction. *Carll*, 322 Mich App at 704; MCL 777.43. It is important to bear in mind that there still needs to be a preponderance of evidence in the record demonstrating that the criminal activity took place. *Johnson*, 298 Mich App at 131; see also MCL 777.43(2). Here, the only evidence in the record suggesting defendant committed first-degree home invasion was the PSIR, which simply indicated that defendant's charge for first-degree home invasion was pending in the circuit court, revealing that the district court already found probable cause to bind the case over to circuit court. However, since probable cause is a less demanding standard of evidence than the preponderance of evidence standard applicable under OV 13, and there was no other evidence in the record suggesting defendant committed first-degree home invasion, we conclude that there was insufficient evidence to count defendant's first-degree home invasion charge as the third offense under OV 13.

However, our inquiry does not end with finding defendant's legal assertions correct as the record reveals there was a preponderance of evidence that defendant committed multiple felonious assaults during the incident. See *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007) (explaining that a sentencing court can consider uncharged offenses so long as they are supported

by a preponderance of evidence). "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (citation omitted). "The offense of assault requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Henry*, 305 Mich App 127, 143; 854 NW2d 114 (2014) (citation omitted). "A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (citations and quotation marks omitted). At trial, the prosecutor argued that defendant's act of hitting defendant on the head with his gun, a dangerous weapon, supported a conviction for felonious assault. This act constituted a felonious assault because defendant put Murray in reasonable fear of receiving a battery when he chased Murray with a dangerous weapon and seemingly intended to injure Murray when he hit him on the head with the gun.

We conclude that defendant committed two additional felonious assaults when he earlier pointed his gun at Murray and Cassandra and told them that he was going to kill them. Defendant's unlawful act of pointing the gun at Murray and Cassandra, while telling them he was going to kill them, was sufficient to cause reasonable apprehension of receiving an immediate battery. Further, defendant used a dangerous weapon while doing this, and intended to place Murray and Cassandra in reasonable apprehension of receiving an immediate battery given the circumstances. Accordingly, there was a preponderance of evidence that defendant committed felonious assaults during separate criminal acts than the one he received a conviction for, thereby providing a third offense applicable under OV 13. Therefore, the trial court's error in counting either the first-degree home invasion offense or the felon-in-possession offense as the third criminal act necessary to assess 25 points under OV 13 was harmless, and does not require resentencing. See *People v Jones*, 270 Mich App 208, 212; 714 NW2d 362 (2006) (noting that a trial error does not merit reversal unless it appears more probable than not that the error was outcome determinative); see also *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006) (explaining that scoring errors which change the sentencing guidelines range require resentencing).

Defendant also argues that his convictions for unarmed robbery and felonious assault should not both count under OV 13 because they constituted a single felonious act. See *Carll*, 322 Mich App at 704 (holding that a single felonious act cannot constitute a continuing pattern of criminal behavior under MCL 777.43). In *Carll*, this Court held that the defendant's reckless driving constituted a single act, despite the fact that there were multiple victims. *Id*. at 705. However, as is the case here, crimes which arise from the same criminal episode, but do not originate from a single felonious act, are individually applicable under OV 13. *Id*. at 705. In *People v Gibbs*, 299 Mich App 473, 477, 488; 830 NW2d 821 (2013), this Court held that the defendant committed three separate acts that constituted a pattern of criminal activity when he robbed a store and received convictions for armed robbery, unarmed robbery, and one count of conspiracy to commit armed robbery, MCL 750.157. Though Gibbs's convictions all arose from a single robbery, they were considered separate acts under OV 13.

Here, defendant's convictions should be scored separately under OV 13 because, while defendant's unarmed robbery and felonious assault convictions were part of the same criminal episode, they did not constitute a single felonious act. Defendant hit Murray on the head with a gun, and after the gun went off, defendant stood up, took Murray's phone, and left. These

constituted separate acts. Furthermore, defendant pointed the gun at Cassandra and Murray while threatening to shoot them before he began chasing Murray, making this another separate criminal act. Therefore, because defendant's convictions for unarmed robbery, felonious assault, along with his uncharged acts of felonious assault, were all applicable to OV 13 and constituted separate criminal acts, albeit during a single criminal episode, the trial court did not err by assessing 25 points under OV 13.

Next, defendant argues that his counsel's failure to advance a claim of right defense was unreasonable and constituted deficient performance because the claim of right defense was a viable defense in this case where defendant thought Murray's phone was his own. Further, defendant asserts, there was a reasonable possibility that inclusion of that defense would have "favorably determined the outcome of this case."

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Clear error exists where the reviewing court is left with a "definite and firm conviction" that the lower court made a mistake. *Id*. Unpreserved claims of ineffective assistance of counsel are reviewable for errors that are apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

A criminal defendant has the right to a fair trial which includes the right to effective assistance of counsel. *Isrow*, 339 Mich App at 531. "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted). "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). When evaluating an ineffective assistance of counsel claim, there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy." *Id*. at 532. "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

According to the claim of right defense, "if a defendant had a good-faith belief that the defendant had a legal right to take the property at issue, then the defendant cannot be convicted because the defendant did not intend to deprive another person of property." *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999). Defendant's arguments regarding his claim of right defense rests on a limited reading of the trial record, namely, ignoring Cassandra's testimony that Murray yelled that the phone was his when defendant took it, and Murray's testimony that, after taking Murray's phone, defendant stated, "it's my phone now." Though defendant claimed that he never said, "this is my phone now," the jury obviously believed the testimony given by Murray and Cassandra in finding defendant guilty of unarmed robbery because that crime requires that the offender have the intent to rob. *People v Williams*, 288 Mich App 67, 82; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012) (explaining that the crime of unarmed robbery requires the intent to

-6-

rob).    Therefore, even if we presume that defense counsel's failure to raise the claim of right defense constituted ineffective assistance of counsel, contrary to his assertions on appeal, the jury believed the testimony offered by Cassandra and Murray, and did not believe the testimony of defendant.    In order to prevail on his claim of ineffective assistance of counsel, defendant must demonstrate not only that his counsel was ineffective but also that but for counsel's deficient performance, "there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 5.  Because the record is clear that the jury did not believe defendant's testimony that he mistakenly believed the phone was his, he cannot demonstrate a reasonable probability that the outcome would have been different.  Accordingly, defendant has failed to demonstrate the requisite prejudice for relief.

In his Standard 4 brief, defendant argues that the trial court abused its discretion by denying defendant's motion for a directed verdict of acquittal because there was insufficient evidence that defendant committed armed robbery, MCL 750.529.

"We review de novo a trial court's decision whether to deny a motion for a directed verdict." *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014) (citation omitted). "In doing so, we review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted).

The elements necessary to prove armed robbery are set forth in MCL 750.529:

(1) [T]he defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.  [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (citation omitted).]

"The offense of assault requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Henry*, 305 Mich App at 143 (citation omitted).  "A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (citations and quotation marks omitted).

A rational trier of fact could have found defendant committed an assault when he engaged in any one of these acts: (1)when he threatened to shoot Murray and Cassandra, or (2)when he came running at Murray before tackling him or (3)by striking Murray on the head with the gun before taking Murray's phone.  A rational trier of fact could have also found defendant committed a felonious taking when he picked up defendant's phone and left with it because Murray testified that he informed defendant that the phone belonged to Murray before defendant left with it, and Cassandra testified that defendant acknowledged that the phone belonged to Murray.  Finally, a rational trier of fact could have found defendant was armed with a weapon described in the statute when he took Murray's phone because Murray and Cassandra, with some discrepancies, testified

that defendant had a gun, and used it to hit Murray on the head just before defendant walked away with Murray's phone. See MCL 750.529 (explaining that possession of a dangerous weapon during a robbery converts the robbery to an armed robbery). Therefore, because a rational trier of fact could have found all of the essential elements of the crime were proven beyond a reasonable doubt, the trial court did not err by denying defendant's motion for a directed verdict.

Defendant additionally argues he was denied his right to a speedy trial because his trial occurred over two years after he was arrested. We conclude that defendant was not denied his right to a speedy trial.

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we . . . review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006); see also *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022) (explaining that questions of constitutional law are reviewed de novo).

The federal constitution "guarantee[s] criminal defendants a speedy trial without reference to a fixed number of days." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013) (citation omitted). "Claims of violation of the right to a speedy trial are evaluated on the basis of four factors (the "*Barker*[3] factors"): (1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Maples v State*, 342 Mich App 370, 382; 994 NW2d 834 (2022) (citation omitted). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Instead, these are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 382-383 (quotation marks and citation omitted).

The first *Barker* factor is the length of the delay. *Id*. "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *Rivera*, 301 Mich App at 193 (citation omitted). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id*. (citation omitted). Defendant was arrested on May 31, 2020, but did not have his trial until July 25, 2022. Since this delay exceeded 18 months, it was presumptively prejudicial. *Id*. "Under the *Barker* test, a presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted).

Under the second *Barker* factor, the prosecution has offered no reasons for the delay. While we note that the speedy trial issue was raised on appeal in defendant's Standard 4 brief, after the prosecution had already filed its appellate brief, the prosecution failed to file a supplemental brief addressing the issues raised in defendant's Standard 4 brief.

Defendant asserts that his preliminary examination was delayed six times because the prosecution could not produce its witnesses. However, defendant provided no evidentiary support for this assertion. See *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014) (holding a defendant-appellant may not "merely announce a position and leave it to this Court to rationalize

---

[3] *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

the basis for the claim, or elaborate the argument."). Defendant also argued that the prosecution delayed in an attempt to gain a tactical advantage, but, again, defendant failed to provide evidence to support that assertion. See *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009) (rejecting the defendant's speedy-trial argument in part because the defendant presented no evidence that the prosecution delayed in an attempt to gain a tactical advantage).

It is not apparent from the register of actions why it took over two years to commence defendant's trial. There was a three-week period from the time defendant filed a motion to quash until the trial court denied that motion, and then there was a three-month gap from the time defendant retained a private attorney until the pretrial conferences began. Further, one pretrial conference was adjourned for a few weeks at the request of the defendant. Each of these delays, amounting to roughly five months, are attributable to defendant.

Further, defendant requested an in-person jury trial, which was subject to delays resulting from the Michigan Supreme Court's decision to suspend jury trials in response to the COVID-19 pandemic. *People v Witkoski*, 341 Mich App 54, 63; 988 NW2d 790 (2022) (explaining that, on March 18, 2020, the Michigan Supreme Court instructed all trial courts to adjourn all criminal matters, including jury trials, for a period of a few months). This Court has recently held that any "delays caused by the COVID-19 pandemic are not attributable to the prosecution when evaluating a speedy-trial claim." *People v Smith*, ___Mich App ___ slip op at 1; ___NW2d ___(2024) (Docket No.362114).

In sum, roughly five months of delay are attributable to defendant, an unspecified amount of the delay is not attributable to the prosecution because of the COVID-19 pandemic, *Id*. and if there is another portion of the delay not attributable to defendant or the pandemic, because the prosecution failed to file a responsive brief arguing otherwise, that delay is attributable to the prosecution as an "unexplained" delay. See *People v Lown*, 488 Mich 242, 262; 794 NW2d 9 (2011) (holding that unexplained delays in holding a criminal trial may be attributed to the prosecution). However, since it is unclear whether there was an unexplained delay attributable to the prosecution that was longer than the delay attributable to defendant, we will not weigh this factor for or against either party. Similar to the facts presented in *Smith*, "[w]hile the length of the delay in this case creates a presumption of prejudice to [defendant], nearly all the delay stemmed from emergency public-health measures taken to limit the spread of COVID-19, and the delay did not prejudice [defendant's] ability to defend against the charges." *Smith*, slip op at 1-2.

Further, we note that defendant first asserted his right to a speedy trial on July 21, 2021, nearly 14 months after he was arrested, and one year before his trial. Defendant's decision to wait nearly 14 months after his arrest to assert his right to a speedy trial does not weigh in his favor. See *Cain*, 238 Mich App at 113-114 ("[W]e cannot ignore the fact that Cain waited eighteen months to assert her right to a speedy trial and that her trial commenced within nine months of when she asserted that right."). Though defendant's trial did not commence as quickly as the trial in *Cain*, the delay from defendant's assertion of his speedy-trial right to his trial was caused in part by his decision to hire a new attorney during that timeframe, along with the three-week adjournment he requested. Since defendant waited for more than half of his pretrial incarceration to assert his right to a speedy trial, this factor weighs mildly against defendant.

Turning to the question of prejudice, we must determine whether the delay prejudiced defendant. With respect to a delay of trial, "[t]here are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (citation omitted). Defendant argues that he was personally prejudiced because his movement in society was limited for the 11 months he was on bond, and because, when he was incarcerated, he had to physically defend himself from inmates, was housed in segregation, and endured mistreatment from the jail staff. Defendant asserted that he experienced anxiety and concern because of his incarceration during COVID-19. Finally, defendant asserted that his defense was impaired as a result of his incarceration because he could not contact favorable res gestae witnesses.

Even if we were to conclude that defendant suffered personal deprivation and anxiety during his incarceration, it is important to note that defendant experienced these feelings because he committed other criminal acts while he was on bond. Consequently, defendant's personal prejudice from being incarcerated weighs very mildly in his favor. Furthermore, this Court has held that "anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997) (citation omitted).

Though defendant claimed that he was unable to contact favorable res gestae witnesses as a result of his incarceration, he did not describe the testimony those witnesses would have given, explain why he did not contact them during his 11-month period while out on bond, or explain why his attorney could not contact those witnesses for him. As such, defendant's assertions of prejudice are best described as general allegations. "General allegations of prejudice are insufficient to establish that [a defendant] was denied his right to a speedy trial." *Gilmore*, 222 Mich App at 462.

In sum, we conclude that a significant portion of the delay complained of in this matter is attributable either to defendant or to the COVID 19 pandemic. Since neither form of delay is attributable to the prosecution, we therefore conclude that defendant's right to a speedy trial was not violated. *Smith*, slip op at 1-2.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young

-10-